**UNITED STATES of America, Appellee,**

v.

**Jesus LOSADA and Rosalinda Losada, Defendants-Appellants.**

**Nos. 436, 515, Dockets 80–1444, 81–1274.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1981.

Decided March 12, 1982.

Certiorari Denied June 14, 1982. See 102 S.Ct. 2945.

David L. Lewis, New York City (Lewis & Fiore, New York City, on the brief), for appellant Jesus Losada.

Michael G. Dowd, Kew Gardens, N. Y. (Manton, Pennisi & Dowd, Kew Gardens, N.Y. on the brief), for appellant Rosalinda Losada.

Diane F. Giacalone, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., and John B. Latella, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before TIMBERS and KEARSE, Circuit Judges, and METZNER, District Judge.*

TIMBERS, Circuit Judge:

On these appeals from judgments entered upon jury verdicts in the Eastern District of New York, John F. Dooling, *District Judge*, and Edward R. Neaher, *District Judge*, convicting both appellants of violations of the federal narcotics laws and convicting one appellant of engaging in a continuing criminal enterprise, we find the following to be the principal claims of error raised on appeal:

(1) Whether dismissal of the conspiracy count required dismissal of the substantive counts against both appellants and dismissal of the continuing criminal enterprise count against one appellant.

We hold that it did not.

(2) Whether the district court abused its discretion in not granting a severance.

We hold that it did not.

(3) Whether there was error in admitting the testimony of a witness from an earlier trial in which appellants were defendants.

We hold that there was not.

(4) Whether one of the appellants was properly convicted of engaging in a continuing criminal enterprise.

We hold that she was.

Other subordinate claims of error are raised, as noted below. See note 5, *infra*.

We find no merit in any of the claims of error raised. We affirm.

I.

These appeals are sequels to earlier appeals decided by this Court in *United States v. Cambindo Valencia*, 609 F.2d 603 (2 Cir. 1979), *cert. denied*, 446 U.S. 940 (1980), with which we assume familiarity. To the extent here relevant, the Court in *Cambindo Valencia* reversed the convictions of the two named appellants on the instant appeal and remanded their cases for retrial.

After retrial before Judge Dooling, the jury on August 20, 1980 found both appellants—Jesus Losada and Rosalinda Losada—guilty of conspiracy to import, distribute, and possess cocaine with intent to distribute it from 1972 to 1976 in violation of 21 U.S.C. §§ 846 and 963 (1976) (Count I); of importing cocaine in violation of 21 U.S.C. § 960 (1976) (Count II); and of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841 (1976) (Count III). In addition, the jury convicted Rosalinda of conspiring to import, distribute, and possess cocaine with intent to distribute it in 1977 in violation of 21 U.S.C. §§ 846 and 963 (1976) (Count IV); and of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976) (Count V).

Prior to retrial, Jesus had moved to dismiss the conspiracy count (Count I) on the ground of double jeopardy. Judge Dooling deferred ruling on this motion until after trial, at which time he granted it. Jesus was sentenced by Judge Dooling to eight years imprisonment, to be followed by five years of special parole, on Counts II and III, the sentences on these counts to run concurrently. Jesus presently is on bail pending appeal.

After Judge Dooling died, Judge Neaher granted Rosalinda's motion to dismiss the conspiracy count (Count I) because of the government's failure to honor a plea agreement. He sentenced her to ten years imprisonment on Count V and to three years imprisonment on Counts II, III and IV. He ordered her sentences on Counts II, III and IV to run concurrently with each other and with her sentence on Count V. He also sentenced her to concurrent five year terms of special parole on Counts II and III, following her release from prison. She is now in prison serving her sentence.

II.

There was evidence from which the jury could have found as follows.

* Hon. Charles M. Metzner, Senior United States District Judge, Southern District of New York, sitting by designation.

Jesus and Rosalinda were engaged in a large drug conspiracy. Witnesses described several drug transactions in which Colombian cocaine illicitly imported into the United States was delivered to Rosalinda in her apartment. An important witness, John Canzoneri, testified that he purchased some cocaine from her in 1974, paying in cash, and saw her give the money to Jesus. Canzoneri testified that she explained to him the details of the drug network.

Since one Augustine Lemos was living in Colombia and was unavailable at the time of trial, the government introduced his testimony from the prior 1978 trial where the Losadas were defendants. Lemos testified that he and another man arranged to import cocaine for Jesus and had had meetings with him. Freddie Williams, who was supposed to take the cocaine from the ship to Jesus, was arrested and five kilograms of cocaine were seized from him. Canzoneri testified that Rosalinda told him that the seized cocaine belonged to her and Jesus. He further testified that she said she would arrange for bail for Williams.

Canzoneri also testified that in late August 1974 Rosalinda offered to sell some cocaine on consignment to him. He was arrested while attempting to sell the cocaine (which turned out to be lidocaine) to an undercover agent.

By late 1975, Rosalinda and Jesus were living apart. Rosalinda continued her dealings in cocaine. Several witnesses testified that they saw cocaine in Rosalinda's safe deposit box. Others testified that they paid cash to her for cocaine.

In September 1977, Rosalinda and the man whom she later was to marry traveled to Colombia to arrange for a shipment of cocaine. Eventually she and others were arrested. A search produced letters in code which, when deciphered, indicated that cocaine would be delivered to Rosalinda and others from a Colombian ship. When the ship was searched, a package of lidocaine was discovered.

There was a great deal of other evidence. The foregoing summary, however, is believed to be adequate to an understanding of the issues on this appeal.

## III.

We turn first to the principal claims of error raised by appellant Jesus Losada.

Jesus was convicted on the conspiracy count and on the substantive counts of possessing and importing cocaine. Following his conviction, Judge Dooling dismissed the conspiracy count on the ground of double jeopardy. He did not disturb the convictions on the other two counts.

Jesus argues that the court should have dismissed the substantive counts because of prejudicial spillover. He claims that evidence was admitted which would have been inadmissible if the conspiracy count had been dismissed before trial. Such evidence, according to Jesus, increased the likelihood that the jury would convict on the substantive counts.

■ There is no automatic rule requiring reversal of convictions on substantive counts when a conspiracy count has been dismissed on the ground of double jeopardy either at the close of the government's case or after the verdict has been returned. *Pacelli v. United States*, 588 F.2d 360, 366–67 (2 Cir. 1978), *cert. denied*, 441 U.S. 908 (1979).

In *United States v. Variano*, 550 F.2d 1330 (2 Cir.), *cert. denied*, 433 U.S. 912 (1977), we stated the standard to be applied in such a situation. "Appellants can only succeed in this argument if they show bad faith on the part of the Government in bringing the conspiracy charge, or if they show prejudice." *Id.* at 1334. The reviewing court must consider the number of substantive counts, the number of defendants, the length of the trial and the amount of evidence against each defendant. *Id.* The court also should consider whether there would have been any significant change in defense strategy if the conspiracy count had not been present. *Pacelli, supra*, 588 F.2d at 366.

■ In the instant case, only the two appellants were charged and only two sub-

stantive counts were involved. The instant case is significantly different from *United States v. Branker*, 395 F.2d 881, 887–89 (2 Cir. 1968), *cert. denied*, 393 U.S. 1029 (1969), where the Court found prejudice as to four of eight defendants named in only a few of eighty counts and where a long trial had taken place. The trial in the instant case required three weeks, which is not exceptionally long. Jesus does not claim that his trial strategy would have been different. This was not a case of Jesus becoming "lost" in the evidence against a multitude of other defendants. *See generally United States v. Scafidi*, 564 F.2d 633, 642 (2 Cir. 1977), *cert. denied*, 436 U.S. 903 (1978); *United States v. Ong*, 541 F.2d 331, 336–38 (2 Cir. 1976), *cert. denied*, 429 U.S. 1075 (1977).

We find unpersuasive Jesus' claim of prejudice resulting from the court's refusal to dismiss the two substantive counts. He contends that there was incurable spillover from the "massive" evidence against his wife. We discuss this contention more fully in section IV of this opinion. In short, a review of the evidence persuades us that Judge Dooling was correct in ruling that "[i]f any evidence prejudiced the jury's consideration of Jesus Losada's case on Counts [II and III], it was the evidence of his own acts and not evidence of others' acts which 'spilled over' on him."

Finally, there was no error in any event because, even without the conspiracy count, testimony as to out-of-court statements of co-conspirators would have been admissible to prove substantive acts. *Pacelli, supra*, 588 F.2d at 367 & n.21; *accord, United States v. Cambindo Valencia, supra*, 609 F.2d at 641 (order on petition for rehearing); *United States v. Ruggiero*, 472 F.2d 599, 607 (2 Cir.), *cert. denied*, 412 U.S. 939 (1973).

We hold that dismissal of the conspiracy count does not require reversal of the substantive counts.

## IV.

Jesus argues that the court should have severed his trial from that of his wife, Rosalinda, because the joinder was prejudicial under Fed.R.Crim.P. 14. Before trial, Judge Dooling ruled that he would not order such a severance despite the risk of prejudicial spillover to Jesus. After trial, he ruled that the joinder was "certainly proper". We agree.

■ An appellant bears a heavy burden of persuasion in urging reversal of a trial court's decision not to grant a severance. "[T]he decision to grant or deny a severance pursuant to Rule 14 is within the broad discretion of the trial court and will not be overturned on appeal absent some showing that the defendant suffered substantial prejudice due to the joint trial." *United States v. Weisman*, 624 F.2d 1118, 1129–30 (2 Cir.), *cert. denied*, 449 U.S. 871 (1980). To make such a showing, it is not enough for an appellant to argue that he would have had a better chance of acquittal at a separate trial. *United States v. Werner*, 620 F.2d 922, 928 (2 Cir. 1980). In deciding whether the trial court's action was correct, a reviewing court should consider the need for judicial economy and the extent to which the judge instructed the jury to consider the evidence separately with respect to each defendant. Furthermore, the fact that evidence may be admissible against one defendant but not against another defendant does not necessarily require a severance. *United States v. Lyles*, 593 F.2d 182, 190 (2 Cir.), *cert. denied*, 440 U.S. 972 (1979).

■ What chiefly persuades us that there was no error in the denial of a severance here is Judge Dooling's careful instructions to the jury to consider the evidence against the two appellants separately. His charge repeatedly distinguished between the two appellants, speaking, for example, of "the defendant whose case you are considering." Furthermore, the evidence against Jesus was simple and straightforward enough for the jury to consider without any significant spillover effect. The references to him, although few in comparison with the many references to Rosalinda, were distinct. Any claimed prejudicial spillover surely did not

rise to the level of "substantial" prejudice required by *Weisman, supra.*

We hold that the denial of a severance was not error.

## V.

█ Jesus also claims error in the admission of the testimony of Augustine Lemos from the earlier trial of the Losadas. The testimony was admitted under Fed.R.Evid. 804(a)(5) which permits the admission of testimony from an earlier proceeding despite its hearsay nature when the witness is unavailable.

Jesus asserts, first, that the procedure by which the testimony was presented was prejudicial. The United States Attorney read the questions asked of Lemos and the judge read his answers. Jesus argues that by reading Lemos' answers the judge improperly gave credence to the testimony. We find Jesus' claim in this respect to be without merit. Judge Dooling precluded any possible confusion by clearly stating to the jury that the testimony was that of Lemos, not that of the judge. More than this was not required.

Jesus asserts, secondly, that Lemos was not actually unavailable and that the hearsay exception pursuant to which his testimony was admitted consequently was inapplicable. Jesus concedes that Lemos was in Colombia. He maintains, however, that the government could have required him to attend the trial if the government had not decided that his testimony might be favorable to appellants. Jesus argues that the presence of Lemos at the earlier trial shows that he was available. We find his claim in this respect also to be without merit.

Rule 804(a)(5) provides that prior testimony of a witness is admissible if he is absent "and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means." Lemos is a Colombian citizen living in Colombia and is not subject to compulsory process. The only issue, therefore, is whether the government used "other reasonable means", such as a voluntary request, to obtain his attendance.[1]

We find that the government did make a reasonable attempt to obtain his attendance. The government submitted an affidavit and memorandum detailing its efforts to obtain Lemos' attendance. Judge Dooling properly accepted the government's representations and ruled that Lemos' prior testimony was admissible. Absent any showing whatsoever by Jesus that the government could have obtained the presence of Lemos at trial or that it had acted in bad faith, there is no basis for disturbing Judge Dooling's ruling.

Jesus also claims error in the admission of Lemos' testimony on the ground that it tended to prove the conspiracy count (which later was dismissed) and therefore was prejudicial. This claim is without merit because Lemos' testimony was relevant to the substantive counts.

We hold that there was no error in the admission of Lemos' testimony.

## VI.

█ We turn next to the principal claims of error raised by appellant Rosalinda Losada.

Rosalinda claims that there was insufficient evidence to sustain her conviction on Count V which charged her with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976).[2] Judge

---

**1.** *United States v. Squella-Avendano,* 478 F.2d 433 (5 Cir. 1973), held that, in the absence of an extradition treaty with the country in which the unavailable witness was located, the witness' unavailability was sufficiently established. *Id.* at 439.

**2.** 21 U.S.C. § 848(b)(1976) provides:

"(b) Continuing criminal enterprise defined. For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons

Dooling rejected this claim in his memorandum and order dated October 28, 1980. We agree.

The federal standard for appellate review of a claim of insufficiency of the evidence places a very heavy burden on an appellant. The fountainhead of this standard is the following statement from the oft-cited Supreme Court case of *Glasser v. United States*, 315 U.S. 60, 80 (1942): "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Accord, Hamling v. United States*, 418 U.S. 87, 124 (1974); *United States v. Clemente*, 640 F.2d 1069, 1078 (2 Cir.), *cert. denied*, 454 U.S. 820 (1981); and many other similar holdings, including those of our Court, too numerous to cite.

In *United States v. Singh*, 628 F.2d 758 (2 Cir.), *cert. denied*, 449 U.S. 1034 (1980), we elaborated on this standard: "[T]he evidence must be viewed in the light most favorable to the opposing party, *crediting all available inferences in favor of the opposing party.* . . . Furthermore, all issues of credibility must be considered questions solely within the jury's province." *Id.* at 766 (emphasis added).

Rosalinda argues that the evidence did not show that she received "substantial" income from the alleged criminal enterprise, as required by § 848(b)(2)(B). The statute does not prescribe the minimum amount of money required to constitute "substantial" income, but the language clearly was intended to exclude trivial amounts derived from occasional drug sales.[3] We hold that this applies to Rosalinda despite her attempt to show that her cocaine sales yielded less than $2000 over a four year period. The jury was entitled to credit the government's evidence regarding her income and spending habits, as well as all reasonable inferences to be drawn therefrom. She received large sums of money and paid substantial amounts for school tuition, bail, attorney's fees, clothing, jewelry, a house in Colombia and several expensive airline tickets—all far in excess of her legitimate income. Even if we were to accept the $2000 figure suggested by Rosalinda as her income from cocaine sales, that is not so insignificant as to render the statute inapplicable.

Rosalinda's argument based on her supposed Second Circuit "substantial income" standard under the statute is specious and without case support. She cites various § 848 cases involving more income than she claims is involved here, *e.g.*, *United States v. Barnes*, 604 F.2d 121, 146–47 (2 Cir. 1979) (income of $1,380,000), *cert. denied*, 446 U.S. 907 (1980), and concludes that the amount here involved is too low to make § 848 applicable. Suffice it to say that neither the statute nor the cases establish a *minimum* amount of "income or resources" required to make § 848 applicable. If Congress had intended that there should be a minimum requirement, it easily could have so provided.

We also find unpersuasive Rosalinda's contention that there was insufficient evidence for the jury reasonably to find that she was engaged in a *continuing* criminal enterprise, rather than in single isolated acts. For example, her payment of bail and attorney's fees for an arrested drug seller strongly indicated that there was a group involved in this ongoing criminal activity.

Furthermore, contrary to her contention, it was sufficient under the statute that the five or more persons who worked in concert with her did so at different times, even if not simultaneously. *United States v. Barnes, supra*, 604 F.2d at 157 ("The statute does not require that the five subordinates must act in concert at the same time.") There was ample evidence that five or more

with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
   (B) from which such person obtains substantial income or resources."

3. The "substantial income" provision was discussed at length and upheld against a vagueness challenge in *United States v. Collier*, 358 F.Supp. 1351, 1355–56 (E.D.Mich.1973).

persons worked in concert with Rosalinda and under her supervision over a period of time in the continuing criminal enterprise.

Rosalinda nevertheless asserts that the evidence failed to show that she "occupie[d] a position of organizer, a supervisory position, or any other position of management" in the criminal enterprise as required by § 848(b)(2)(A). Rather, she says that she was a "bumbling go-between". We find this contention to be without merit. She need not have been the *dominant* organizer or manager as long as she was in some managerial position. The jury reasonably could have found that she was a manager, based on the evidence of her payment of bail and attorney's fees on behalf of a member of the group, as well as other acts on behalf of the group.

Finally, Rosalinda contends that there must have been a *successful* criminal enterprise. It is true that the government's evidence showed for the most part unsuccessful ventures. That, however, is not fatal to a § 848 prosecution. Failed transactions are the most likely to be detected. It was reasonable for the jury to infer that many transactions escaped undetected. The statute does not require a *successful* criminal enterprise.

We hold that Rosalinda was properly convicted under Count V of engaging in a continuing criminal enterprise.

## VII.

Rosalinda contends that the dismissal of the conspiracy count undermined her conviction on the continuing criminal enterprise count. The latter count expressly incorporated the four other counts; so she argues that when one of those (the conspiracy count) was dismissed, a necessary predicate for conviction under § 848 was removed.

4. Although the statute does not define "continuing series of violations", courts have required that there be a minimum of three. *United States v. Valenzuela, supra,* 596 F.2d at 1364–65; *United States v. Michel, supra,* 588 F.2d at 1000 & n.15.

5. For example, among other claims of error which we have carefully considered but find

She relies on *United States v. Guiliano,* 644 F.2d 85 (2 Cir. 1981), in support of this contention. In *Guiliano,* the appellant was convicted of a bankruptcy fraud scheme under a provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) (1976). After reversing one of the two predicate counts of racketeering essential to conviction under the RICO count, we held that the RICO conviction could not stand. 644 F.2d at 88.

*Guiliano* has no application here. The government in the instant case was not required to prove each of the four counts referred to in the § 848 count as part of the continuing criminal enterprise. Although the § 848 count of the indictment referred to four other counts of the indictment, as long as the jury found *three* requisite violations—as it did in convicting on three substantive counts—the § 848 conviction will stand. *See United States v. Valenzuela,* 596 F.2d 1361, 1364–65, 1367 (9 Cir.), *cert. denied,* 444 U.S. 865 (1979); *United States v. Michel,* 588 F.2d 986, 1000–01 & n.15 (5 Cir.), *cert. denied,* 444 U.S. 825 (1979).[4]

We reject, as we did Jesus' claim in section III of this opinion, the claim of Rosalinda that, because the conspiracy count was dismissed, evidence admitted to prove it prejudiced her on the substantive counts.

We hold that dismissal of the conspiracy count as to Rosalinda did not require dismissal of any of the other counts as to her.

## VIII.

We have carefully considered all other claims of error of both appellants. We find them to be without merit and not worthy of discussion in this opinion.[5]

We summarize our essential holdings:

without merit, are the claims that the charges against Jesus were "stale"; that seizure of cash from Rosalinda's safe deposit box deprived her of her Sixth Amendment right to counsel; that prosecution on the continuing criminal enterprise count was the result of prosecutorial vindictiveness; and that the continuing criminal enterprise statute is unconstitutionally vague on its face and as applied. With respect to the

(A) With respect to the claims of appellant Jesus Losada:

(1) Dismissal of the conspiracy count does not require reversal of the convictions on the substantive counts because of prejudicial "spillover".

(2) The district court did not abuse its discretion in denying Jesus' motion for a severance.

(3) There was no error in the admission of the testimony of the witness Lemos from the earlier trial.

(4) The charges against Jesus were not "stale".

(B) With respect to the claims of appellant Rosalinda Losada:

(1) Rosalinda was properly convicted of engaging in a continuing criminal enterprise.

(2) Dismissal of the conspiracy count does not require reversal of convictions on the continuing criminal enterprise count or on the other substantive counts.

(3) Seizure of cash from Rosalinda's safe deposit box did not deprive her of her Sixth Amendment right to counsel.

(4) Prosecution on the continuing criminal enterprise count was not a result of prosecutorial vindictiveness.

(5) The continuing criminal enterprise statute is not unconstitutionally vague on its face or as applied.

Appellants were convicted on the basis of overwhelming evidence of serious crimes after a fair trial. We order that the mandate issue forthwith.

Affirmed.

latter claim, *see United States v. Sperling*, 506 F.2d 1323, 1343 (2 Cir. 1974), *cert. denied*, 420 U.S. 962 (1975); *United States v. Sisca*, 503 F.2d 1337, 1345 (2 Cir.), *cert. denied*, 419 U.S. 878 (1974); *United States v. Manfredi*, 488 F.2d 588, 603 (2 Cir. 1973), *cert. denied*, 417 U.S. 936 (1974).