**UNITED STATES of America,**

v.

**Ronald BROWN, Defendant.**

**No. 84 Cr. 800 (RWS).**

United States District Court,
S.D. New York.

Feb. 6, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Michael Kellogg, Asst. U.S. Atty., New York City, of counsel.

Stolar Alterman Wagner & Boop, P.C., New York City, for defendant; Martin R. Stolar, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant Ronald Brown ("Brown") was found guilty on December 20, 1984 by a jury of conspiring to sell heroin in violation of 21 U.S.C. § 846. He now moves this court to set aside the verdict and to order a new trial pursuant to Fed.Rules of Crim.P. 29(c) and 33. For the following reason, the motion is denied.

**Facts**

This case arises out of Operation Pressure Point. The facts of this case come from the testimony of Police Officer Grimbal ("Grimbal"). He was the undercover agent who was on duty at approximately 7:30 in the evening on October 9, 1984 at 115th Street and 8th Avenue in Harlem. He was engaged in a buy operation and after he drove to the site he exited his car and "approached a male standing on the corner of 115th Street and 8th Avenue." He asked him for "D."

Explaining that D was a street term for heroin, Grimbal testified that person who he approached who was standing alone was Gregory Valentine ("Valentine"). Valentine was reported to respond by asking the officer how much he wanted. At that point the officer said "a joint." In defining a "joint," Grimbal said "a joint, as opposed to a joint of marijuana which is a cigarette of marijuana, is a term for a Harlem quarter or $40.00 worth of heroin."

Valentine asked Grimbal who he knew around the area, and Grimbal asked Valentine "Do you know Scott?" Valentine said no and it was at this point that the defendant Brown came up to the conversation. Valentine said to Brown "he wants a joint, but I don't know him" and Brown said, after looking at Grimbal, "He looks okay to me."

At that point Valentine is reported to have said "Okay, but I am going to leave it somewhere and you can pick it up." Brown, without prompting, then said, according to Grimbal, "You don't have to do that. Just go and get it for him. He looks alright to me. I will wait right here."

Although no money was shown or displayed and no money was talked about, Valentine then said "Okay. Come on with me around to the hotel." Grimbal then followed him to the hotel at 300 West 116th Street where he was told to sit on a car and to give Valentine a few minutes to go and

get the drugs. At that point Valentine asked for the money and Grimbal gave him $40.00. Valentine also said, "You are going to take care of me for doing this for you, throw some dollars my way?" Grimbal responded "Yeah."

Valentine went into the hotel and then came back a few minutes later. They then returned to 115th Street and 8th Avenue. Valentine placed a Newport cigarette box on the hood of a nearby parked car, walked away and watched while Grimbal went over to pick up the cigarette box and removed a glassine envelope containing what proved to be heroin. Grimbal removed the glassine, put $5.00 of prerecorded "tip" money inside the box and walked away. As he walked away Valentine asked him whether or not he had taken care of him and Grimbal responded that he had. Valentine then went over to the cigarette box and took the $5.00 that was in it.

Valentine and Brown were subsequently taken into custody and Brown was charged with conspiracy to sell heroin in violation of 21 U.S.C. § 846 and aiding and abetting the sale of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). At the trial, the prosecution offered Grimbal as an expert in the sales of narcotics in Harlem on the basis that he was able to testify that such sales "typically involve more than one person."

Characterizing the transaction on trial as a typical one, Grimbal testified that the role of Brown in the transaction was, in his opinion, "a steerer." When asked why he had such an opinion, Grimbal testified: "Because I believe that if it wasn't for his approval, the buy would not have gone down." The jury found Brown guilty on the count of conspiracy but was unable to reach a verdict on the aiding and abetting count and a mistrial was declared on that count.

In his motion, Brown argues that the expert testimony of Grimbal as to street-level narcotics sales was improperly admitted and, therefore, constituted prejudicial error and, alternatively, that there was insufficient evidence to support the jury verdict and that, in judging the sufficiency of the evidence, the court should not consider the expert testimony of Grimbal.

**Admissibility of Officer Grimbal's Testimony**

■ It is settled law in the Second Circuit that an undercover agent, properly qualified as an expert, may supplement his personal observations with expert testimony as to the conduct of street-level narcotics sales. "The subject of the expert testimony here, *i.e.*, the clandestine manner in which drugs are bought and sold, is unlikely to be within the knowledge of the average layman." *United States v. Carson*, 702 F.2d 351, 369 (2d Cir.1983). *See United States v. Young*, 745 F.2d 733, 760 (2d Cir.1984).

■ Grimbal's testimony as to the division of responsibility in a typical street sale of heroin and his opinion as to the role of Brown in the sale on October 9, 1984 fell within the ambit of permissible expert testimony. *United States v. Carson, supra*, 702 F.2d at 369 ("it was proper for the agents to recount their observations and render an opinion based on them"); *United States v. Young, supra*, 745 F.2d at 760 ("Such opinions are admissible both under rule 702 as expert opinions and under Rule 701 as lay opinions based on perceived events"). As to Brown's suggestion that Grimbal was not qualified as an expert witness, I found at trial that Grimbal was properly qualified as an expert by training and experience. Once that determination was made, the weight to be accorded his testimony was a matter for the jury to decide. The jury was instructed as to the weight to be accorded to the testimony of an expert, and the defendant made no objection to those instructions.

I find that the expert testimony of Grimbal was properly admitted and there are no grounds for setting aside the verdict or granting a new trial on that basis.

**Sufficiency of the Testimony**

Brown maintains that the expert testimony offered by the government is insufficient to sustain the verdict which was rendered. He contends that the jury substituted the expert opinion of Grimbal for evidence in the case, and that without the expert testimony there is no objective evidence involving Brown in the transaction. He suggests that the only way to account for the jury being unable to agree on the aiding and abetting charge in the indictment is that they substituted Grimbal's testimony for the facts of the case. Brown relies on the case of *United States v. Santiago,* slip op. (S.D.N.Y. Dec. 3, 1984), in which the Honorable Constance Baker Motley granted a defendant's motion for a judgment of acquittal on the grounds that the jury gave undue weight to a police officer's expert testimony.

A defendant advancing a claim based on insufficiency of the evidence bears a very heavy burden. *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.1983); *United States v. Losada,* 674 F.2d 167, 173 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). As the Second Circuit stated in *Carson:*

> Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *United States v. Barnes,* 604 F.2d 121, 157 (2d Cir.1979), *cert. denied,* 446 U.S. 907 [100 S.Ct. 1833, 64 L.Ed.2d 260] (1980). In making this determination, we must view the evidence in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80 [62 S.Ct. 457, 469, 86 L.Ed. 680] (1942), and construe all permissible inferences in its favor, *United States v. Dazzo,* 672 F.2d 284, 288 (2d Cir.), *cert. denied,* [459 U.S. 836], 103 S.Ct. 81 [74 L.Ed.2d 77] (1982).

702 F.2d at 361.

In *Santiago,* Judge Motley held that this burden was met where the only evidence on which a jury could have relied to find the defendant guilty of aiding and abetting was the testimony of the police officer that the defendant was acting as a lookout. There the officer testified that the defendant was approached by his co-defendant immediately after the co-defendant had told the officer that he would have to speak with his partner before carrying out a drug deal. The two had a brief conversation out of the officer's earshot, then returned and walked with the officer around the corner. At that point the co-defendant, after telling the officer to get his money ready, again approached the defendant who was a few feet away and then left to go around the corner. While he was gone, the defendant remained on the street and periodically looked at the undercover officer. The Court ruled that there was no evidence that the defendant saw any drugs or negotiations or that he heard anything said between his co-defendant and the officer; the officer never heard the defendant make any statement. Judge Motley noted that while knowledge and intent can be established by inference from circumstantial evidence, "[a]t the very least, there must be enough evidence in the record for the jury to rationally choose to believe the government's story of the case and harbor no reasonable doubt in so doing." Slip op. at 7. The Court concluded that the only evidence that the defendant knew that there was a drug deal happening or actually participated in the transaction came from the speculation of the officer that he was acting as lookout. Because the Court held that it is impermissible to allow speculation, "however grounded in experience, to substitute for evidence of knowledge and intent," it granted the motion for acquittal. *Id.*

■ In the case at hand, I conclude that there was enough evidence independent of Grimbal's speculation as to the nature of Brown's role to justify the jury's finding of conspiracy. Specifically, the evidence allows the inference that Brown expressly

approved the sale of heroin to Grimbal. Valentine, dissatisfied with Grimbal's statement of who he knew on the street, appealed to Brown: "This guy wants to buy a joint, but I don't know him." Brown expressed no surprise at the appeal, surveyed Grimbal, and told Valentine: "He looks all right to me." The jury could infer from that portion of the interchange that Brown knew that Valentine was selling heroin and that Brown, despite that knowledge, was willing to help Valentine by offering advice and encouragement.

In response to Brown's statement, Valentine turned to Grimbal and said: "Okay, but I'm going to leave it somewhere and you can pick it up." Brown then interjected: "You don't have to do that. Just go and get it for him. He looks all right to me. I will wait right here." From this interchange, the jury could infer that Brown knew ·the location of Valentine's source of heroin (he said "Go get it for him," not "Give it to him") and that that knowledge indicated some sort of prior understanding between the two. The jury could further infer an agreement from the fact that Valentine did precisely what Brown told him to do, *i.e.*, he went to get the heroin and sold it to Grimbal.

In sum, there was sufficient evidence independent of Grimbal's testimony for the jury to find, in accordance with the court's instructions, that "the minds of [Valentine and Brown] met in an understanding way, and that they agreed ... to work together in furtherance of the unlawful scheme alleged in the indictment...." Jury instructions at 8. The jury's inability to reach a verdict on the substantive count does not necessarily imply that the jury substituted Grimbal's evidence for its own judgment.

■ As Judge Newman noted in his concurring opinion in *United States v. Young, supra:*

> If the observed actions of a defendant do not establish a prima facie case, I do not believe that an expert's opinion that his actions are criminal may carry the prosecution's proof above the requisite line. It is one thing to permit a jury· to weigh that opinion in considering an otherwise adequate case; it is quite another matter to let that opinion salvage an otherwise insufficient case.

745 F.2d at 766 (Newman, J., concurring). The evidence in this case was sufficient to establish a prima facie case irrespective of Grimbal's expert testimony. And drawing inferences from that evidence, the jury could properly conclude that Brown was guilty of conspiracy. Thus, Grimbal's expert testimony was not necessary to "salvage an otherwise insufficient case." It was merely another factor for the jury to weigh "in considering an otherwise adequate case."

For the reasons discussed above, the defendant's motion for a new trial or a judgment of acquittal is denied.

IT IS SO ORDERED.