UNITED STATES OF AMERICA

v.

Bienvenido MEJIA, Defendant.

No. 01 CR. 150(VM).

United States District Court,
S.D. New York.

July 12, 2005.

Jeffrey A. Udell, Assistant United States Attorney Mary Jo White, United States Attorney Criminal Division, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Defendant Bienvenido Mejia ("Mejia") moves to exclude at trial evidence of his attempt, on November 4, 2000, to remove approximately $71,000 from the United States without declaring it to the United States Customs Service ("U.S.Customs"). Mejia also moves to exclude the prior trial testimony of coconspirator Victor Medina ("Medina"), who the Government asserts is unavailable to appear at Mejia's retrial. The Government opposes both motions. For the reasons stated below, the Court denies Mejia's motion to exclude evidence of his attempt to unlawfully remove currency from the United States and reserves judgment on his motion to exclude Medina's prior testimony until a time closer to the commencement of the retrial, so that the Court may consider any changed circumstances.

## I. BACKGROUND

Mejia is charged in this case with participating in a conspiracy to distribute cocaine. Although Mejia was already convicted of this charge after a jury trial, that conviction was vacated on appeal. *See United States v. Mejia,* 356 F.3d 470 (2d Cir.2004). A retrial of Mejia is scheduled to commence February 6, 2006.

At Mejia's first trial, the Government was permitted, over defense counsel's objection, to present evidence that, on November 4, 2000, Mejia had attempted to remove approximately $71,000 in money orders from the United States without declaring that sum to U.S. Customs officials, and that he pleaded guilty in February 2001 to failing to declare the money and making materially false statements to U.S. Customs officials. The Government alleges that the $71,000 represents proceeds from the alleged illegal narcotics conspiracy and seeks to introduce it as evidence of Mejia's participation in that conspiracy.

Also at Mejia's first trial, the Government presented testimony by Medina, who pleaded guilty to participating with Mejia in the same conspiracy. Medina testified at that trial, pursuant to a cooperation agreement with the Government, regarding his membership in a drug trafficking organization responsible for importing cocaine into the United States from the Dominican Republic, his role in extracting cocaine from the doors of shipping containers allegedly sent to Mejia, Mejia's alleged use of his produce company, Nuevo Renacer, as a front for drug trafficking, and Mejia's alleged personal supervision and knowledge of drug-related activities involving Medina and others. As explained further below, Medina now resides in the Dominican Republic and the Government's attempts to arrange for him to return to the United States to testify at Mejia's retrial have thus far been unsuccessful. For this reason, the Government seeks to introduce Medina's testimony from Mejia's first trial.

## II. DISCUSSION

### A. EVIDENCE THAT MEJIA AT-TEMPTED TO REMOVE $71,000 FROM THE UNITED STATES WITHOUT DECLARING IT TO U.S. CUSTOMS OFFICIALS

■ Mejia moved at his first trial to exclude the evidence of his unlawful attempt to remove $71,000 in money orders from the United States. The Court denied the motion on the record. Although the Court affirms its prior ruling for the reasons stated on the record at the first trial (*see* Trial Tr. at 8–11), the Court will briefly address Mejia's current arguments in favor of preclusion.

First, Mejia argues that the cases cited by the Government in support of admitting evidence of the existence and attempted transfer of the $71,000 are distinguishable from the instant case because they all included "proof that the defendant possessed or spent a large amount of money *coupled with* other evidence demonstrating that the money had no legitimate source." (Letter from Lisa Scolari to the Court in Opposition to the Admission of Mr. Mejia's Attempt to Smuggle in Excess of $71,000.00, dated June 13, 2005 ("Scolari June 13 Ltr. re. $71,000") at 1.) As Mejia acknowledges, however, the Second Circuit has also found evidence of unexplained wealth to be relevant on the grounds that "there was no *affirmative* evidence that the cash was derived from legitimate business." *United States v. Viserto*, 596 F.2d 531, 536 (2d Cir.1979) (emphasis added).

Moreover, the Government has submitted evidence in this case that suggests that the $71,000 did not have a legitimate source. Mejia argues that in fact he "operated a legitimate produce business that generated significant amounts of cash" (Letter from Lisa Scolari to the Court dated June 20, 2005 ("Scolari June 20 Ltr.") at 2), which renders the evidence of the $71,000 inadmissible because it indi-

cates that those funds had a legitimate source. The Government, however, has submitted copies of bank statements for the account that Mejia maintained for his produce business, Nuevo Renacer, which support a finding that that business was not the source of the funds in question. The amount of money contained in and deposited to the Nuevo Renacer bank account during the relevant period of time, July through November 2000, was significantly less than $71,000. The monthly balance did not exceed $20,691.65 and the monthly net credits to the account did not exceed $5,808.46. (*See* Citibank statements, attached as Exhibit A to the Letter from Scott L. Marrah and Pablo Quiñones to the Court dated June 28, 2005 ("Marrah June 28 Ltr.").)

In addition, two of Mejia's alleged co-conspirators testified at the first trial that, proximate to the time of Mejia's attempt to remove the $71,000 from the United States, they gave Mejia funds in excess of that sum to compensate him for his alleged participation in the drug conspiracy. (*See* Letter from Scott L. Marrah to the Court dated June 14, 2005 ("Marrah June 14 Ltr.") at 2 (citing Trial Tr. at 321, 533, 536).) Finally, other than his own statements that he operated a legitimate business, Mejia has not submitted any substantiating evidence to show that the funds in question derived from a lawful source. Accordingly, evidence of the $71,000 is sufficiently probative of the Government's claim that Mejia had an illegitimate source of wealth to be admissible at the retrial.

Mejia also argues that evidence of the $71,000 should be precluded because the Government's proffered theory of its admissibility—that it is evidence of conduct in furtherance of the crime charged, rather than of "other crimes, wrongs or acts" pursuant to Federal Rule of Evidence 404(b)—does not apply. Mejia states that, at his first trial, the Government offered

"no proof that [Mejia] was going to use [the money] for anything other than his own personal needs" and that "there was certainly no proof that he intended to use the money to further the drug operation." (Scolari June 13 Ltr. re. $71,000 at 2.)

■ In order for Mejia's attempt to remove undeclared funds from the United States to be deemed "in furtherance of" the drug conspiracy, though, it is not necessary to show that he intended to use those funds to purchase drugs or other items related to the conspiracy. Rather, "acts or statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy." *United States v. Eisen,* 974 F.2d 246, 269 n. 8 (2d Cir.1992) (citing *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1199 (2d Cir.1989)); *see also United States v. Mendoza–Medina,* 346 F.3d 121, 131 (5th Cir.2003) (statements made to conceal source of funds allegedly derived from illegal conspiracy were made in further of the conspiracy because defendant "likely made them to conceal the source of the $368,000 and assure that the conspiracy could continue."). A jury might reasonably infer from Mejia's attempt to conceal the $71,000 from U.S. Customs officials, along with evidence suggesting that those funds derived not from any legitimate business but from the drug conspiracy, that at least one of Mejia's purposes in attempting to unlawfully remove the funds was to conceal his participation in the activities that allegedly produced them. Therefore, evidence of the $71,000 is admissible as evidence of an act done in furtherance of the conspiracy.

Mejia also argues that the fact that he sought to conceal the $71,000 is not relevant to the source of those funds. Mejia explains that "he could have had any number of reasons to conceal it." (Scolari June 13 Ltr. re. $71,000 at 3.) That a reasonable jury might draw more than one inference from an item of evidence, however, does not make that evidence inadmissible to support one among other possible conclusions. Rather, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Mejia's attempt to secretly remove undeclared cash in money orders of $71,000 from the United States has such a tendency with respect to the crime charged.

Finally, Mejia argues that the prejudice of the proffered evidence outweighs its probity. As the Court explained at the first trial, "the probative value of the currency violation is high because a juror might infer that Mejia recently received a large cash payment and, two, that the source of the payment was illicit, and three, it might corroborate the expected testimony of Mejia's co-conspirators." (Trial Tr. at 10.) The Court found that evidence of the currency violation was not likely to result in undue prejudice because the violation "is not [so] inherently inflammatory that the jurors would decide Mejia's case on the basis of their emotions that such allegations might [incite]." (*Id.*) The Court further found that the currency violation is not "so similar [to the alleged narcotics violation] that jurors would confuse" the two. (*Id.*) In addition, as noted at the first trial, the Court may provide a limiting instruction to the jury to minimize any risk of undue prejudice that may result from the admission of the evidence in question. Accordingly, the Court affirms its prior ruling that evidence of Mejia's currency violation is admissible at trial for the purpose, and under the safeguards and conditions stated above.

## B. *PRIOR TESTIMONY OF VICTOR MEDINA*

Mejia also opposes the admission of the testimony given by Medina, one of his

alleged co-conspirators at Mejia's first trial. Although out-of-court statements offered for the truth of the matter asserted are generally inadmissible as hearsay, Federal Rule of Evidence 804(b)(1) ("Rule 804(b)(1)") creates an exception in cases where the declarant is unavailable for "[t]estimony given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." A declarant is "unavailable" for purposes of Rule 804(b)(1) if he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Fed. R.Evid. 804(a)(5). Rule 804 further provides that "[a] declarant is not unavailable as a witness if . . . [his] absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." Fed.R.Evid. 804(a).

■ Mejia argues that the Government has not met its burden to prove that Medina is unavailable in this case on the grounds that it has not shown that it has "made reasonable, good faith efforts to secure [his] attendance at the retrial." (Letter from Lisa Scolari to the Court in Opposition to Introduction of Victor Medina's Prior Testimony dated June 13, 2005 ("Scolari June 13 Ltr. re. Medina Testimony") at 1 (citations omitted).) As Mejia points out, "[i]mplicit . . . in the duty to use reasonable means to provide the presence of an absent witness is the duty to use reasonable means to prevent a present witness from becoming absent." *United States v. Mann*, 590 F.2d 361, 368 (1st Cir.1978).

After Mejia's first trial, Medina was scheduled to be deported to the Dominican Republic. The Government, however, pre-vented his deportation at that time by obtaining a writ of habeas corpus *ad testificandum* and a material witness warrant, pursuant to which Medina was placed in custody. The Government stated at a bail hearing for Medina that it had attempted to obtain "approval from the Immigration Authorities to permit [Medina] to remain at liberty in the United States pending [Mejia's] re-trial." (Transcript from Bail Hearing before Magistrate Judge Mark D. Fox on May 4, 2004 in White Plains, New York (attached as Exhibit D to Letter from Pablo Quiñones to the Court dated June 7, 2005) ("Bail Tr.") at 3.) The Government proposed at the bail hearing that "the Court keep the material witness warrant in effect and set bail for Mr. Medina." (*Id.*) The Government further proposed that Medina be required to sign a $10,000 personal recognizance bond and that he be permitted to return to the Dominican Republic, but required to advise the Government of any changes in his residence or contact information there and to return to the United States upon the Government's request to testify at Mejia's retrial. (*See id.* at 3–5.) The Magistrate Judge granted that request. The Government also had Medina sign an affidavit agreeing that he would return to the United States to testify at Medina's retrial. The Government's attempts to arrange for Medina to return for the retrial, however, have thus far been unsuccessful.

Mejia argues that the Government failed to use reasonable means to prevent Medina from becoming absent. Mejia bases this argument on the facts that the Government "did not inform defense counsel that Medina was subject to deportation or that a final order of deportation had been filed in February 2004; [that] counsel was not privy to any of the proceedings relating to the material witness warrant lodged after Medina completed serving his sentence . . .; and [that] the government nev-

er asked counsel to expedite the retrial." (Scolari June 13 Ltr. re. Medina Testimony at 2.) Mejia further argues that "the government could have utilized 18 U.S.C. 3144 and detained the witness for an additional 'reasonable' period of time while his deposition was arranged and taken."[1] (*Id.* at 3.) Finally, Mejia claims that the Government's use of an unsecured bond to secure Medina's return was "ludicrous ... [because] Medina was indigent, and he had already agreed to forfeiture of $132,000 as part of his guilty plea and sentence; as of the date of the sentence, ... Medina had not paid any of this money, and the court declined to impose an additional fine on him in light of Medina's indigency." (*Id.*)

Arguably it may not have been realistic to expect Medina to return to the United States under these conditions, and the Government could have taken additional steps to try to ensure Medina's presence at Mejia's retrial. However, there is no evidence in the record before the Court that Medina's "absence is due to the procurement or wrongdoing" of the Government "for the purpose of preventing the witness from attending or testifying." Fed.R.Evid. 804(a). Although such a purpose could, under some circumstances, be inferred from a party's failure to make reasonable efforts to ensure a witness's presence, the Court finds that the Government's efforts to secure Medina's presence in this case preclude a finding that the Government acted with a purpose to make Medina unavailable. As previously noted, the Government stated at Medina's bail

hearing that it had attempted to obtain "approval from the Immigration Authorities to permit [Medina] to remain at liberty in the United States pending [Mejia's] re-trial." (Bail Tr. at 3.) The Assistant United States Attorney who represented the Government at Medina's bail hearing stated that his office "went to the highest levels [of the immigration service] in New York" to obtain authorization for Medina to remain at liberty in the United States pending Mejia's retrial and that he had been told that his office "went to Washington" as well. (*Id.*) The Court concludes that these attempts to prevent Medina's deportation and to condition his release on his return to the United States preclude a finding that the Government procured Medina's absence for the purpose of preventing him from being present at the retrial.

■ The Court further finds that the Government's efforts to obtain Medina's presence after he had already been deported to the Dominican Republic were reasonable and satisfy the requirements of Rule 804(b)(1). As noted above, Rule 804(b)(1) requires that the proponent of a witness's prior testimony attempt to secure the presence of the witness through "process or other reasonable means." Because Medina is a Dominican citizen residing in the Dominican Republic, his presence cannot be obtained through the process of serving him with a subpoena. *See* Fed. R. Crim P. 17(e)(1) (authorizing service of subpoenas within the United States); 28

---

1. 18 U.S.C. § 3144 provides that, "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."

U.S.C. § 1783(a) (authorizing the issuance of subpoenas to individuals outside the United State only if those individuals are residents or nationals of the United States). Medina's presence also cannot be secured in this case through the process of extradition. As the Government points out, although there is an extradition treaty between the United States and the Dominican Republic, that treaty does not allow for extradition of a person on the grounds that he or she is a material witness or has violated a bail condition. *See* Convention for the Extradition of Criminals, June 19, 1909, U.S.-Dom. Rep., art. II (listing crimes for which a person may be extradited), 36 Stat. 2468.

Because there is no process available to secure Medina's presence, the Court must consider only whether or not the Government has used "other reasonable means" for that purpose. The Government states that Special Agent George Ma contacted Medina to arrange for his return to the United States in April 2005 and subsequently obtained a visa for him. The Government further represents that it purchased airplane tickets for Medina's trip to the United States and told Medina where he could pick up his visa and tickets in the Dominican Republic. At that point, however, Medina refused to return. The Government reports that it tried to contact Medina several times by telephone after he refused to return, but has been unable to reach him.

In *United States v. Losada*, 674 F.2d 167 (2d Cir.1982), the Second Circuit found that the Government had made sufficient efforts to secure the presence of a witness who was a citizen of Colombia living in Colombia. In that case, "[t]he government submitted an affidavit and memorandum detailing its efforts to obtain [the witness's] attendance." [2] *Losada*, 674 F.2d at 172. The Court of Appeals found that the district court "properly accepted the government's representations and ruled that [the witness's] prior testimony was admissible." *Id.* In light of these facts, along with the absence of "any showing whatsoever by [the defendant] that the government could have obtained the presence of [the witness] at trial or that it had acted in bad faith," the Second Circuit upheld the district court's decision to admit the prior testimony.

As in *Losada*, in the instant case the Government has detailed its efforts to obtain Medina's presence and there has been no showing by Mejia that the Government could take additional, more productive steps for that purpose or that it has acted in bad faith in its efforts to convince Medina to return. Given the unavailability of compulsory process to secure Medina's presence, the Court finds that the Government's steps of obtaining a visa for him, purchasing his airplane tickets, and making several attempts to contact him by telephone constitute reasonable efforts under the circumstances and evince good faith.

■ Finally, the Court finds that Mejia had an adequate "opportunity and similar motive to develop [Medina's] testimony by direct, cross, or redirect examination," Fed.R.Evid. 804(b)(1), at his first trial. Mejia argues that he did not have a full and fair opportunity to impeach Medina at his first trial because "defense counsel did not receive the government's 3500 material until Monday March 25, 2002 and Medina testified the next day." (Scolari June 13 Ltr. re. Medina Testimony at 4 (citation omitted).) Mejia also points out that "[t]here is scant reference to discovery

---

**2.** The Circuit Court in *Losada* does not specify the efforts that the government claimed to have made to secure the witness's presence in that case and this Court has been unable to locate the district court's opinion.

material in counsel's cross-examination of the witness, which was also extremely short: just 35 pages, in contrast to direct, which fills 160 pages." (*Id.*) In addition, Mejia's current counsel represents that "several important issues reflecting on the witness's honesty were either inadequately explored or not explored at all" (*id.* at 5) by Mejia's counsel at the first trial.

Mejia's objection based on the timing of the Government's turning over of the 3500 material has no merit. Section 3500 of Title 18 of the United States Code requires the Government to provide the defendant in a criminal case with statements by Government witnesses that relate to the subject of the testimony of those witnesses. The Government is not required to provide the defendant with such material until after the witness to whom the material relates has testified on direct examination. *See* 18 U.S.C. § 3500(b); *United States v. Nelson–Rodriguez*, 319 F.3d 12, 37 (1st Cir.2003) (rejecting argument by defendant that the government violated 18 U.S.C. § 3500 by disclosing an FBI Report of a government witness's debriefing "only days before the testimony was to be introduced" because "the government does not need to disclose the statement or report of a government witness 'until said witness has testified on direct examination in the trial of the case.'") (quoting 18 U.S.C. § 3500(a)). The Government commenced its direct examination of Medina on March 26, 2002. (*See* Trial Tr. at 179.) Therefore, even assuming, as Mejia claims, that defense counsel at the first trial did not receive the 3500 material pertaining to Medina until March 25, 2002, there would be no basis on which to find any delay by the Government. On the contrary, the Government provided Mejia with the material before it was required to do so pursuant to section 3500(b).

▇ The Court also finds that defense counsel's cross-examination of Medina at the first trial was adequate for purposes of Rule 804(b)(1). While Mejia's counsel at the first trial might have conducted a more extensive cross-examination than he did, "[a] criminal defendant is entitled to 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Salim*, 855 F.2d 944, 953–954 (2d Cir. 1988) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (*per curiam*) (emphasis in original)). "That opportunity 'is generally satisfied when the defense is given a full and fair opportunity to probe and expose [the] infirmities [of testimony] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'" *Id.* at 954 (quoting *Fensterer*, 474 U.S. at 22, 106 S.Ct. 292). The transcript of Medina's cross-examination and re-cross-examination at Mejia's first trial in this case shows that defense counsel challenged Medina's credibility by questioning him about his commission of marriage fraud (*see* Trial Tr. at 341), his opportunities before Mejia's trial to coordinate his testimony with that of his co-defendants (*see id.* at 341–343, 375–376), Medina's potentially very substantial reduction in his sentence for cooperating with the Government and testifying against Mejia (*see id.* at 343–344; 371–373), and Medina's additional motive to testify against Mejia in the hope that the Government would not require him to pay the full amount of restitution contemplated by his plea agreement (*see id.* at 347). Defense counsel also explored apparent inconsistencies between Medina's in-court testimony and his post-arrest statements (*see id.* at 356–358) and generally challenged his veracity (*see id.* at 361–362, 366). Thus, the cross-examination in this case "reveals a serious effort ... to undermine and discredit [the wit-

ness's] testimony." *United States v. Ciak*, 102 F.3d 38, 44 (2d Cir.1996). Accordingly, the Court finds that Mejia had a sufficient opportunity to develop Medina's testimony at the first trial by means of cross- and re-cross-examination.

The Court also finds that defense counsel at the first trial had a "similar motive," Fed.R.Evid. 804(b)(1), to develop Medina's testimony at the first trial as will be had at the retrial. Where the two proceedings in question under Rule 804(b)(1) "are trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial." *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir.1993). In this case, the matters in dispute at the first trial are essentially identical to those in dispute at the retrial. The importance of those matters to the outcome of both proceedings is also the same. Therefore, the Court finds that Rule 804(b)(1)'s "similar motive" requirement is also satisfied.

■ Nevertheless, the Court reserves judgment on Mejia's motion to exclude Medina's prior testimony because the retrial in this case is not scheduled to commence for several months and, hence, the Court cannot rule out the possibility that further efforts by the Government closer to the new trial date may still produce Medina's presence. At the time the Government became aware that Medina refused to return to the United States to testify, and thus sought approval to present Medina's prior testimony at the retrial of this case, the new trial was scheduled to commence within a matter of weeks, on June 20, 2005. At Mejia's request, the trial was adjourned until February 6, 2006. Accordingly, the Court cannot assume that Medina's unavailability will carry forward and that additional efforts by the Government would necessarily prove unsuccessful. Given the substantial additional time, the Government should endeavor to make additional reasonable and good faith efforts to obtain Medina's appearance. In the event the Government sufficiently establishes Medina's continuing refusal to make himself available by the time of the new trial date, the Court will accept Medina's prior testimony as admissible at the retrial pursuant to Rule 804(b)(1).

### III. ORDER

Accordingly, it is hereby

**ORDERED** that the motion of defendant Bienvenido Mejia ("Mejia") to exclude at trial evidence of his attempt, on November 4, 2000, to remove approximately $71,000 from the United States without declaring it to the United States Customs Service is DENIED; and it is further

**ORDERED** that the Government make additional reasonable and good faith efforts to obtain the presence of Victor Medina ("Medina") at the retrial of this case, which is scheduled to commence on February 6, 2006. The Court reserves judgment on Mejia's motion to exclude Medina's prior trial testimony pending the Government's communication to the Court, no sooner than thirty days prior to the commencement of the retrial in this matter, of its additional efforts to obtain Medina's presence and the outcome of those efforts.

**SO ORDERED.**