Vincent PACELLI, Jr.,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 96, Docket 78–2064.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1978.

Decided Dec. 5, 1978.

Rehearing Denied Dec. 28, 1978.

Steven B. Duke, New Haven, Conn., for appellant.

James P. Lavin, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Audrey Strauss and Robert J. Jossen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a denial of a motion to vacate sentence in the Southern District of New York, Milton Pollack, *Judge.* Petitioner is currently serving a sentence[1] for violations of federal narcotics laws. The motion to vacate the sentence and convictions was filed pursuant to 28 U.S.C. § 2255.[2] For reasons somewhat different from those of the district court, we affirm.

In December, 1973 petitioner Pacelli was tried before Judge Pollack and a jury on seven counts of violating federal narcotics laws, 21 U.S.C. §§ 812, 841 and 846, along with four co-defendants. These charges included one count of conspiracy to distribute narcotics and six counts of distributing narcotics. The events and actions which formed the basis of the charges will not be discussed in detail here.[3] Suffice it to say at this point that the charges involved widescale narcotics distribution operations involving at least twelve persons, and related events included the murder of one potential prosecution witness.

Pacelli was convicted of the conspiracy count and two of the substantive counts. One count was dismissed by Judge Pollack during the trial, and the jury found Pacelli not guilty of the remaining three counts. On appeal of Pacelli's convictions in 1974, this court found that the conspiracy charge was barred by the double jeopardy clause of the fifth amendment. *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), and accordingly re-

1. Pacelli is currently serving a 20-year sentence in connection with a previous narcotics violation. The sentences imposed for the convictions challenged here were two 15-year sentences to run concurrently. Upon completion of that term, Pacelli will serve a life sentence for a murder conviction.

2. 28 U.S.C. § 2255 provides in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

3. The facts are fully laid out in the direct appeal on these charges, *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), and in related cases, *United States v. Pacelli,* 521 F.2d 135 (2d Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976) and *United States v. Pacelli,* 470 F.2d 67 (2d Cir. 1972), *cert. denied,* 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973).

versed the conviction for conspiracy.[4] The convictions on the two substantive counts were affirmed. *Mallah, supra.*

In November, 1977 petitioner Pacelli filed a motion pursuant to 28 U.S.C. § 2255 to vacate the convictions on the two substantive counts. The basis of this claim is that his convictions on the substantive narcotics charges were sufficiently tainted by the "spillover" effects of the double jeopardy-barred conspiracy charge to constitute a violation of his fifth amendment rights against being placed in double jeopardy. Pacelli did not raise the issue of "spillover" double jeopardy prohibitions against the substantive counts on direct appeal of the convictions, although the issue does appear to have been raised in his petition for certiorari to the United States Supreme Court.[5]

Judge Pollack denied the motion to vacate the convictions on the grounds that no constitutional issue was raised, and therefore no claim under § 2255 was set forth. Additionally, Judge Pollack found that the failure to raise the "spillover" issue on direct appeal constituted an "impermissible by-pass" of normal appellate procedures and thus was a waiver of petitioner's double jeopardy claims here. Finally, Judge Pollack found that claims of prejudice resulting from the joinder of the barred conspiracy charge with the substantive charges were "specious," since joinder of defendants and charges would have been allowed under Rule 8 of the Federal Rules of Criminal Procedure and substantially the same evidence submitted would have been admissible, even absent the conspiracy charge. While we do not agree with Judge Pollack that no constitutional issue was raised or that the constitutional claim was waived, we agree that there was no showing of prejudice, and therefore affirm the denial of § 2255 relief.

We turn first to an examination of the effects of Pacelli's failure to raise the "spillover" double jeopardy claims on direct review in terms of waiving those claims. Until recently, it appeared clear that a waiver of a constitutional right had to be "knowing," "intelligent," or "an intentional relinquishment or abandonment of a known right or privilege," *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In keeping with this "high waiver standard"[6] which refused to infer a waiver of constitutional rights without a strong showing of such a deliberate waiver, constitutional claims were cognizable in motions under 28 U.S.C. § 2255, often even when the claims were being raised for the first time in these § 2255 motions. *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); *United States v. Loschiavo*, 531 F.2d 659, 662–63 (2d Cir. 1976); *Randall v. United States*, 454 F.2d 1132 (5th Cir.), *cert. denied*, 409 U.S. 862, 93 S.Ct. 151, 34 L.Ed.2d 109 (1972). Thus, constitutional claims were deemed waived only on a showing of "deliberate by-pass" of regular appellate channels. *United States v. West*, 494 F.2d 1314 (2d Cir.), *cert. denied*, 419 U.S. 899, 95 S.Ct. 180, 42 L.Ed.2d 144 (1974).

On the other hand, a claim which was non-constitutional generally could not be raised on collateral review unless it alleged a "fundamental defect" resulting in "a com-

---

4. The double jeopardy claim on the conspiracy count stemmed from Pacelli's 1972 conviction on a narcotics conspiracy charge, involving a conspiracy from January 1-June 14, 1971. In Pacelli's 1973 trial, at issue here, the conspiracy charged was alleged to have covered the time from January 1, 1971-September 23, 1973. This court in *Mallah, supra*, 503 F.2d 971, found that the two conspiracy charges did in fact overlap, and that the government had not met its burden of showing that the conspiracies were not the same.

5. In Pacelli's petition for certiorari, he raised and discussed the question of "[w]hether simultaneously trying and submitting to the jury a jeopardy-barred conspiracy count and related substantive counts is a violation of the Double Jeopardy Clause with respect to *all* charges tried and submitted." (Emphasis in original.)

6. See Cover and Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035 (1977).

plete miscarriage of justice," *Davis v. United States*, 417 U.S. 333, 345–46, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), particularly where such an issue was not raised on direct appeal. *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Wright*, 524 F.2d 1100 (2d Cir. 1975).

In recent years, the Supreme Court has seen fit to narrow the grounds on which motions for collateral relief from criminal convictions can be granted by federal courts. In *Stone v. Powell, supra*, 428 U.S. 465, 96 S.Ct. 3037, the Court held that a state prisoner could not be granted collateral relief in federal court where he had had a "full and fair" opportunity to litigate his fourth amendment claims in state court. In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court rejected the *Fay v. Noia* test of "deliberate by-pass" as applied to a state prisoner who had not complied with a procedural rule requiring assertion of his fifth amendment claim prior to trial, holding that he was entitled to relief under 28 U.S.C. § 2254[7] only upon a showing of cause as to why he had not raised the issue before and actual

prejudice resulting from the alleged constitutional error. This applied to the states a test set out for certain federal cases in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).[8] Courts have also inferred a tactical or strategic decision in the failure to raise some issues below, and have bound defendants to these "tactical" decisions of counsel by refusing collateral relief. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *United States v. West, supra*, 494 F.2d at 1315.

■ The standard by which to judge a possible waiver by Pacelli in his failure to raise "spillover" double jeopardy claims on direct review may turn, then, on whether his claim is "constitutional." If his claim is not a constitutional one, then his failure to raise it earlier may preclude collateral relief. *Stone v. Powell, supra*, 428 U.S. at 477 n. 10, 96 S.Ct. 3037; *Kaufman v. United States, supra*, 394 U.S. at 220 n. 3, 89 S.Ct. 1068; *United States v. Wright, supra*, 524 F.2d 1100. If the claim is a constitutional one, then a higher standard of waiver will apply.[9] We are of the belief that petitioner's claim based on the spillover effects of

---

**7.** 28 U.S.C. § 2254 provides for collateral review of state court convictions in federal court "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."

**8.** *Davis* dealt with the effect of waiver rules set forth in Fed.R.Crim.P. 12(b)(2) which requires certain objections to be raised before trial on the waiver standards of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). The Court found that the statutory waiver rules were controlling, absent a showing of "cause" as to failure to raise the objection earlier and "prejudice" resulting from the error claimed.

Since the *Davis* test of cause and prejudice rests on a statutory construction, it does not dispose of the case here. Rule 12(b)(2) specifically requires that "defenses and objections based on defects in the indictment or information" be raised by pre-trial motion, and Rule 12(f) provides that failure to do so constitutes a waiver. The Notes of the Advisory Committee on Rules make clear that objections to the "selection or organization of the grand jury," the objection in *Davis*, are covered by the waiver provision.

Issues relating to double jeopardy, on the other hand, are specifically listed in the discussion of objections which *may* be raised by pretrial motion, but are not required to be raised so. Thus, failure to raise a claim of former jeopardy before trial does not constitute a waiver under Rule 12(b), and is not controlled by the *Davis* test.

In *Davis*, 411 U.S. at 239–40, 93 S.Ct. at 1581, the Court distinguished the situation in which no statutory waiver provisions were present, noting that

> [T]he court in *Kaufman* was not dealing with the sort of express waiver provision contained in Rule 12(b)(2) which specifically provides for the waiver of a particular kind of constitutional claim of it be not timely asserted.

As in *Kaufman*, then, the claims of double jeopardy here are not controlled by statutory waiver provisions, and thus not subject to the cause and prejudice test.

**9.** Though *Stone* and *Wainwright* have found lower standards of waiver than the "deliberate by-pass" test of *Fay*, neither case disposes of the issue here. *Stone* specifically limits its holding denying collateral relief where there has been opportunity for a full and fair hearing

the double jeopardy-barred charge is a constitutional claim and the higher standard applies.

The government contends here that any prejudice which results from the joinder of a jeopardy-barred conspiracy charge with other substantive charges is a mere "evidentiary error" not of constitutional proportions, citing *Benton v. Maryland*, 395 U.S. 784, 798, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).[10] While *Benton* does not clarify what is meant by characterizing the prejudicial spillover effects as "evidentiary," there is no indication that such a characterization was intended to preclude the notion that the errors involved were of a constitutional nature.[11]

Additionally, the decisions in *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) and *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (2d Cir. 1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966), though distinguishable on their facts from this case,[12] suggest that the possibility of significant prejudice resulting from the joinder of a jeopardy-barred charge with a permissible one *is* a problem of constitutional dimensions.[13] The fact that the jury in this case was given a *Pinkerton*[14] instruction which tied the barred conspiracy charge to the substantive counts on which Pacelli was convicted[15] establishes the possibility of spillover prejudice sufficient to raise a constitutional claim under *Price* and *Hetenyi*.

below to fourth amendment exclusionary claims, and discounts the fear of general revision of habeas corpus doctrine exhibited by the dissenting justices, noting that "[o]ur decision today is *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally." 428 U.S. at 495 n. 37, 96 S.Ct. at 3052. (Emphasis in original.)

Similarly, *Wainwright* applies the *Davis* test of cause and prejudice (see note 8) to a state contemporaneous objection rule. The procedural considerations of requiring adherence to a specific statutory provision at issue there are not applicable to the double jeopardy claim here.

10. It is not obvious on the face of the record that the burglary conviction was affected by the double jeopardy violation. To determine whether there is in fact any such evidentiary error, we would have to . . . examine the record in detail. [*Benton v. Maryland*, 395 U.S. 784, 798, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).]

11. The use of "evidentiary" could simply be a reference to the admission of prejudicial evidence in violation of constitutional rights. The Court did remand the issue to determine the existence of "spillover" prejudice, indicating that some claim of prejudice was cognizable. *Benton v. Maryland, supra*, 395 U.S. at 798, 89 S.Ct. 2056.

12. Both cases involve the joinder of lesser-included offenses with greater ones stemming from the same transaction. See pp. 365–366, *infra*.

13. See *Price v. Georgia*, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970): Second conviction on lesser charge is not "harmless error" because "[t]he Double Jeop-

ardy Clause . . . is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict." Also, see *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844, 864 (2d Cir. 1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966): "Both the existence of this possibility of prejudice and the fact that it arises from a violation of the accused's constitutional rights render the process which resulted in his detention constitutionally inadequate, less than that which is constitutionally due."

14. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

15. Judge Pollack charged the jury:
I have now reviewed the elements of the substantive counts which the Government must prove beyond a reasonable doubt before you may find that the defendant is guilty on those counts. There is furthermore another method by which you should evaluate the evidence and which would sustain the guilt on the substantive counts of the defendant charged even though the Government's proof thereon was not sufficient to establish all the required elements to him.

You will recall the instructions I have given you as to the crime of conspiracy charged in the first count. If you find pursuant to those instructions that a particular defendant was a conspirator, and hence guilty under the first count, you may find him guilty as well under a substantive count in the indictment, providing you find that the crime charged in the substantive count was committed, and that it was committed during and in furtherance of the conspiracy charged in the first count.

If he is a member of a conspiracy, just like a partner he is criminally responsible for the substantive crime, and may be found guilty thereof.

■ Even though Pacelli's claim does raise a constitutional issue, it would still be possible to find a waiver of that constitutional claim based on delay or by-pass. Though the doctrine of laches is not specifically applicable to motions under § 2255,[16] delays and failure to raise issues can be taken into account by a court ruling on a motion for collateral relief.[17]

Pacelli's failure to raise the issue of "spillover" double jeopardy claims on direct appeal or in a petition for rehearing is troubling. We do not give much credence to petitioner's contention that he did not have to raise such an issue because it was purely one of "remedy" for the court to deal with after it found the conspiracy charge to be barred.[18] There is an initial temptation then to square this case with *United States v. West, supra,* 494 F.2d 1314, in which this court found that a failure to raise a fourth amendment claim at trial or on direct appeal constituted a "deliberate by-pass" of avenues of review, and thus a waiver of the claims.

■ Still, there is enough on the record here to find that there was no deliberate waiver of constitutional claims by petitioner. First, the court in *West* intimated some "trial strategy" advantage in failing to object to certain evidence at trial. *United States v. West, supra,* 494 F.2d at 1315. We can see no apparent strategic advantage here in failing to press a double jeopardy claim. In addition, it is conceded by both parties that the present issue of "spillover" prejudice was raised in petitioner's applica-

tion for certiorari to the Supreme Court, and thus is not being raised for the first time in these proceedings on the § 2255 motion. Consequently, we do not believe that petitioner has waived his rights to raise double jeopardy claims.

The next step, then, is to determine the standard by which petitioner's claim of prejudicial error should be evaluated. Since we have found that petitioner has raised a claim of constitutional dimensions, the proper standard for review is that set forth in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967):

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

According to this standard, the beneficiary of the alleged error, in this case the government, has the burden to show that the error was harmless beyond a reasonable doubt. *Harrison v. United States,* 392 U.S. 219, 225, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Chapman v. California, supra,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Petitioner argues that a "per se" rule of reversal is required whenever there exists a possibility of prejudice from the improper joinder of a jeopardy-barred offense with other charges. Petitioner points to *Price, supra,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300, where a reprosecution on a murder charge was barred following an earlier murder trial in which defendant had been convicted of manslaughter. Though

---

The reason for this is that his co-conspirator committing the substantive crime is the agent of the other members of the alleged conspiracy.

**16.** See *Heflin v. United States,* 358 U.S. 415, 420, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring); *Conners v. United States,* 431 F.2d 1207 (9th Cir. 1970).

**17.** Rule 9(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on

grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

Additionally, in *Kaufman, supra,* 394 U.S. at 220 n. 3, 89 S.Ct. 1068, there is the suggestion that failure to take a direct appeal does not rob the reviewing court of the power to rule on constitutional claims, but may allow the court to refuse to do so in "appropriate" cases.

**18.** Petitioner contends that he was not obligated to raise the issue of "spillover" prejudice specifically below, since the issue concerned merely the extent of relief to be granted by the court when it found that one of the counts was jeopardy-barred.

defendant was again convicted only of manslaughter in his second trial, the Court held that the trial on the greater charge was still barred by the double jeopardy clause:

> The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. [398 U.S. at 331, 90 S.Ct. at 1762.]

Thus, no showing of actual prejudice to the defendant was required.

■ Similarly, in *Hetenyi*, a third trial on first degree murder charges was found to be prohibited by the double jeopardy clause following a conviction in the first trial on second degree murder, even though the later trial only resulted in a conviction of second degree murder. This court held that

> [t]he question is not whether the accused was actually prejudiced, but whether there is *reasonable possibility* that he was prejudiced. (Emphasis in original) [348 F.2d at 864.]

We decline to find, however, that these cases established a "per se" rule requiring automatic reversal of any conviction on a charge joined with a jeopardy-barred charge.

There is a significant difference in the offenses involved in *Price* and *Hetenyi* and those involved in the present case. In *Price* and *Hetenyi*, the issue was retrial on an offense following conviction of a lesser-included offense. The Court in both cases saw possible prejudice to defendant from the jury's consideration of a greater offense on retrial. In *Price*, 398 U.S. at 331, 90 S.Ct. at 1762, the Court noted that the inclusion of the murder charge might have "induced the jury to find [the defendant] guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." And in *Hetenyi*, 348 F.2d at 866, this court pointed out that

> it is entirely possible that without the inclusion of the first degree murder charge, the jury, reflecting a not unfamiliar desire to compromise might have returned a guilty verdict on the first degree manslaughter charge on the same evidence.

This concern over jury compromise is not as well warranted in a case like the present one in which the joinder of charges does not involve a lesser-included alternative offense with a greater one, but involves independent offenses of conspiracy and substantive charges. Additionally, neither *Price* nor *Hetenyi* speaks of a "per se" rule, but only considers the possible prejudicial effects of the joinder of barred charges with lesser-included offenses. In keeping with the notion that no reversal is required per se, the Court in *Benton v. Maryland, supra,* 395 U.S. 784, 798, 89 S.Ct. 2056, 23 L.Ed.2d 707, did not automatically reverse a burglary conviction stemming from a retrial of a burglary and jeopardy-barred larceny charge, but remanded the case to the state court to determine if "spillover" prejudice was present.

Since there is no requirement of automatic reversal of Pacelli's substantive narcotics convictions, then, we must determine whether any error was harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California, supra,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We find that this standard has been met.

Petitioner claims that he was severely prejudiced in his trial on all counts because of the joinder of the substantive counts with the barred conspiracy count. He argues that his defensive energies were dissipated by the need to devote so much time and effort to evidentiary and other issues raised by the conspiracy count, particularly the prejudicial evidence of drug transactions by co-defendants. Pacelli also contends that the submission of the conspiracy count tended to confuse the jury. We do not agree.

Since the testimony of those government witnesses who testified with respect to the conspiracy count also related to the substantive counts, the elimination of the conspiracy count would not have significantly altered the defense trial strategy, which was aimed at discrediting these witnesses. Moreover, the fact that the conspiracy count did not confuse the jury or preclude it

from properly sifting through and evaluating the evidence with respect to the substantive counts is attested to by the jury's discriminating acquittal of Pacelli on three of the latter counts.

▮ Pacelli also admits that joinder with certain defendants would have been permitted because of charges of joint participation in substantive crimes with them.[19] It is also the case, as noted by the district court, that evidence concerning joint action is admissible in separate as well as joint trials even without a formal conspiracy charge. *United States v. Granello*, 365 F.2d 990, 995 (2d Cir. 1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967). Similarly, there is no right to automatic dismissal of substantive counts following dismissal of a conspiracy count. *United States v. Variano*, 550 F.2d 1330 (2d Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977).[20]

▮ Evidence of barred crimes, particularly where conviction was had, may be used for some purposes, *e. g.*, subsequent offender crimes, *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), or to show similarity of method or intent. Fed.R.Evid. 404. Moreover, an agreement—even if not itself subject to a criminal charge—may establish an agency relationship and thus warrant introduction of evidence involving confederates. *United States v. Olweiss*, 138 F.2d 798, 800 (2d Cir. 1943). One may not be convicted twice for entering into the same illegal agreement. Evidence of actions by partners in the illegal agreement may be admissible, however, to prove separate substantive offenses not known or charged earlier.

▮ The acts charged in the substantive counts on which Pacelli was convicted were not known to the government at the time of his first conspiracy indictment. While the substantive acts were carried out in accordance with the single conspiracy, they are distinct crimes, and the *Pinkerton* rationale makes all partners in the enterprise responsible for the acts of the others in carrying it out, whether a conspiracy is charged or not.[21] Thus, Pacelli was not substantially prejudiced by the joinder of the distinct substantive offenses with the conspiracy charge.

The district court's order is affirmed.

---

19. *E. g.*, Pacelli could have been tried with co-defendant Alfred Catino on Count Two of possession and distribution of heroin, and with co-defendant Benjamin Mallah on Count Six of distribution of heroin.

20. An indictment need not charge defendants with a conspiracy in order to permit joinder under Rule 8(b). *United States v. Russo*, 480 F.2d 1228, 1237 (6th Cir. 1973), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974); *United States v. Scott*, 413 F.2d 932, 934 (7th Cir. 1969), *cert. denied*, 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970); *United States v. Granello*, 365 F.2d 990 (2d Cir. 1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967). What is necessary is that the defendants are "alleged" to have participated in the same illegal act or series of acts. Pacelli argues that no such allegation was made here because the indictment did not aver that the substantive offenses were acts pursuant to the conspiracy. Such formality is not required. If defendants can be joined without a conspiracy charge, *a fortiori* they can be joined without an express allegation that the offenses

were part of a series of illegal acts. If the necessary linkage could not be inferred from the face of the indictment, it was certainly established by the evidence presented at trial. Thus joinder was permitted under Rule 8(b). Moreover, since Pacelli was named as a defendant in all but one of the substantive counts and since the evidence bearing on these counts necessarily included a great deal of evidence establishing the existence of a conspiracy among the defendants, we cannot say that Pacelli would have been entitled to severance of his trial under Rule 14, even if no conspiracy count had been brought.

21. *Pinkerton v. United States, supra*, 328 U.S. at 647, 66 S.Ct. at 1184:

[I]n the law of conspiracy . . . the overt act of one partner in crime is attributable to all. . . . [W]e fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.