Severino DIAZ, Petitioner,

v.

Charles GREINER, Superintendent,
Sing Sing Correctional Facility,
Respondent.

No. 97 Civ. 3308(RMB).

United States District Court,
S.D. New York.

Aug. 2, 2000.

Severino Diaz, Ossining, NY, pro se.

Thomas F. Hickey, Assistant District Attorney, District Attorney of County of New York, Robert M. Morgenthau, New York City, for Defendant.

## ORDER

BERMAN, District Judge.

### I. Introduction

Pro se petitioner Severino Diaz ("Petitioner" or "Diaz") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 1982 murder (second degree) conviction in New York State Supreme Court, New York County.[1] N.Y. Penal Law § 125.25. Diaz was sentenced to an indeterminate prison term of fifteen years to life, and is currently incarcerated in Sing Sing Correctional Facility in Ossining, New York. Petition at 2;[2] Aff. in Opp. ¶ 4.[3]

Diaz asserts the following challenges to his conviction: (1) the crime was not proven beyond a reasonable doubt; (2) improper "bolstering" at trial of the eyewitness

---

**1.** Although the instant Petition was first filed with the Court Clerk on May 6, 1997, the case was originally assigned to Judge McKenna, and was not reassigned to this Court until November 23, 1998. An answer to the Petition was not received until February 2, 1999.

**2.** "Petition" refers to Diaz's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, dated April 14, 1997.

**3.** "Aff. in Opp." refers to Thomas Hickey's Affidavit in Opposition to Diaz's Petition, dated February 9, 1999 (Mr. Hickey, an assistant with the New York District Attorney's Office, filed the answer to Diaz's Petition on behalf of Respondent Charles Greiner).

testimony of Carlos Cabreja ("Cabreja"); (3) improper introduction at trial of evidence that Diaz fled to Florida; and (4) denial of Petitioner's N.Y.Crim. Proc. Law ("CPL") § 440.10 motion without conducting a hearing. Petition at 5–6.

Respondent asserts that Diaz's claims are all "unexhausted" within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Title I, § 106(b), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), because (i) they were not specifically raised in Petitioner's motion, dated June 2, 1986, for leave to appeal his conviction to the New York State Court of Appeals, *see* Respondent Exhibit K, and, (ii) alternatively, they were never raised in Petitioner's direct appeal, dated July 1985, to the Appellate Division, First Department, as issues of a constitutional dimension. Aff. in Opp. ¶ 25–32.[4] Respondent also argues that Diaz's claims are without merit. *Id.* at. ¶ 33.

For the reasons set forth below, the writ is denied and the Petition is dismissed.

## II. Background

Diaz was found to be involved in an incident on December 15, 1980, at the corner of 173rd Street and St. Nicholas Avenue in Manhattan, in which he shot and killed Ernesto Luciano ("Luciano"). *Id.* at ¶ 14. Luciano was out drinking with some friends at a bar, "Las Tres Copas." *Id.* After leaving the bar, Luciano went to "Viente de Mayo," a restaurant next door. *Id.* While there, Luciano, who was drunk, became angry and began yelling at a waitress. *Id.* Petitioner, who was also in the restaurant, interceded and punched Luciano twice, causing his eye to bleed. *Id.*

Luciano then challenged Petitioner to fight him outside.

The two men began to fight; Luciano swung at Petitioner but missed him. *Id.* at ¶ 15. Petitioner, according to an eyewitness, pulled a gun from his waistband and shot Luciano. *Id.* Petitioner then fled on foot with another man. *Id.* Luciano died the next day, December 16, 1980, from a gunshot wound in the lower back. *Id.* At the time of his death, he also had a laceration over his right eye and bruises on his head. *Id.*

Carlos Cabreja, an eyewitness to the shooting, told detectives that the gunman was a Cuban named "Severino" or "Soriano," whom he saw almost every day. *Id.* at ¶ 16. Cebreja described "Severino" as being approximately 40 years old; having a fair complexion; as five feet, seven or eight inches tall; weighing approximately 160 pounds; with hair that went straight back and was balding on top. *Id.*

The next day, Detective Michael Fletcher began searching for the Petitioner. *Id.* at ¶ 17.

Shortly after the killing, Diaz left New York for Florida, allegedly "to renew his drivers [sic] license." Petition at 6. On May 14, 1981, Detective Fletcher saw Petitioner entering a car in front of "Las Tres Copas;" the car bore Florida license plates. Aff. in Opp ¶ 17. Detective Fletcher arrested Petitioner and advised him of his *Miranda* rights. *Id.* He then asked Petitioner if he was in the area of the bar on the night of the shooting. Petitioner denied that he was in the bar or in the area. *Id.* Several other witnesses, however, including Hugo Roman, the manager of the bar, testified that Diaz was in the area on the night of the killing. Roman 448–451.

4. Respondent adds that Diaz's claims should be deemed forfeited because, having failed properly to present the issues contained in the instant petition to the New York State Court of Appeals, Petitioner would be procedurally barred from bringing these claims again to the Court of Appeals. *Id.* "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those that could have been presented but were not are deemed waived' " *Teague v. Lane*, 489 U.S. 288, 297, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (quoting *People v. Gaines*, 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984)) (citation omitted), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985).

At the trial, Cabreja testified that he saw Petitioner shoot and kill Luciano. Cabreja 270–272. Petitioner's attorney contended that Cabreja had misidentified Petitioner. Aff. in Opp. at ¶ 18. Despite repeated questions on cross-examination and re-cross-examination, Cabreja maintained that he knew the identity of the killer (Petitioner), and, in fact, was familiar with Petitioner because he saw him almost every day and he'd "taken him certain places" in his cab. Cabreja 313–314, 360. Detective Fletcher testified that after he met with Cabreja on December 16, 1980, he immediately began looking for Petitioner. He also testified that he was unable to locate Petitioner at his last known address or anywhere in the neighborhood after the shooting; that he looked for Petitioner in Florida; and that other detectives assisted him in his search. In his testimony, Fletcher also repeated some of the conversation that he had with Cabreja, identifying the Petitioner as the killer.

At the trial. Petitioner's attorney introduced pictures of a man named Miguel Esteves ("Esteves") into evidence, and claimed that Esteves was the actual killer. Aff. in Opp. ¶ 18. At the conclusion of the case, Esteves was introduced as a "physical exhibit," i.e., he stood up in court before the jury but never testified, invoking his 5th Amendment privilege. *Id.* Also at trial, the prosecution introduced evidence that Petitioner disappeared from his neighborhood shortly after the Luciano shooting and that, when arrested, Petitioner claimed that he was not at the scene of the crime. The evidence of Petitioner's flight to Florida, as well as his false statements that he was not at the scene of the crime, were introduced as evidence of "consciousness of guilt." *See* Resp. Exh. H at 31. Petitioner did not request a jury instruction regarding consciousness of guilt evidence and one was not given.

Petitioner was convicted on December 3, 1981.

## Post–Verdict and Post–Judgment Motions

Petitioner made three motions to set aside the verdict or vacate the judgment of conviction. First, on January 18, 1982, Petitioner moved, prior to sentencing, pursuant to CPL § 330.30, to set aside the verdict on the ground of newly discovered evidence.[5] Petitioner's motion included an affidavit by Diogenes Tavares, stating that Petitioner did not commit the crime. On January 22, 1982, the trial court orally denied Petitioner's motion on the ground that the information contained in Tavares' affidavit was, in fact, known to the defense before trial.

On September 3, 1982, Petitioner filed a motion, pursuant to CPL § 440.10, to vacate the judgment of conviction. This motion repeated the defense theory that Esteves was the real killer. Attached to the motion was an affidavit from Antonio Gomez, which stated that Esteves had killed Luciano. An evidentiary hearing was held on the motion and Gomez was called as a witness. The hearing ended after Gomez disavowed his affidavit. Aff. in Opp. ¶ 8. On March 2, 1983, the trial court denied Petitioner's motion. Petitioner sought leave from the New York State Supreme Court, Appellate Division, First Department ("Appellate Division") to appeal. On May 31, 1983, the Appellate Division denied Petitioner's application.

Third, in June 1984, Petitioner filed a second CPL § 440.10 motion to vacate the judgment of conviction. On August 15, 1984, the trial court rendered an oral decision denying Petitioner's motion without a hearing.[6] On September 14, 1984, Petitioner moved in the Appellate Division for leave to appeal the trial court's denial of the June 1984 CPL § 440.10 motion, and

---

**5.** In the motion, Petitioner apparently repeated his claim, which had been rejected by the jury, that Esteves was the actual killer.

**6.** On September 18, 1984, a written order was issued denying the motion.

to consolidate that appeal with Petitioner's (then) pending direct appeal of the judgment of conviction. On October 11, 1984, the Appellate Division granted Petitioner's application.

Petitioner then filed a consolidated appeal of both the judgment of conviction, as well as the denial of his June 1984 CPL § 440.10 motion, to the Appellate Division. In a brief filed in July 1985, Petitioner asserted four claims: (i) that the trial court had improperly refused to hold a hearing on his June 1984 motion to vacate the judgment of conviction; (ii) that his guilt was not proven beyond a reasonable doubt; (iii) that the testimony of the arresting officer impermissibly "bolstered" an eyewitness' (Cabreja's) identification testimony; and (iv) that he was denied a fair trial by the admission of evidence showing his consciousness of guilt, i.e., evidence that he had denied being at the scene of the crime, and that he had fled to Florida shortly after the killing.

On December 20, 1985, the Appellate Division unanimously affirmed Petitioner's conviction without opinion. *People v. Diaz*, 115 A.D.2d 1020, 496 N.Y.S.2d 193 (1st Dept. 1985). Thereafter, Petitioner sought leave to appeal to the New York State Court of Appeals by letter, dated January 2, 1986, enclosing copies of his appellate briefs (on the consolidated appeal) and the December 20, 1985, Appellate Division decision. On February 12, 1986, the Court of Appeals denied leave to appeal without opinion. *People v. Diaz*, 67 N.Y.2d 761, 500 N.Y.S.2d 1032, 491 N.E.2d 289 (1986).

On April 25, 1997, the Court's Pro Se Office received the instant Petition.

## III. Analysis

### A. Exhaustion of Claims and Procedural Default

■ Pursuant to 28 U.S.C. § 2254(b), as amended by the AEDPA, a federal court may not consider a petition for habeas corpus unless the Petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b) ("an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...");[7] *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997). The exhaustion requirement is "based on considerations of comity between federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their prisoner's federal constitutional rights." *Warren v. McClellan*, 942 F.Supp. 168, 170 (S.D.N.Y.1996).

■ Exhaustion consists of (a) claims being "fairly presented" to state courts, *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), and (b) claims being presented to the state courts as a matter of "constitutional dimension." *McFarland v. Scott*, 512 U.S. 849, 861, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). That is, claims, to be exhausted, must be presented to the state court so clearly so as not to require the state court to "look for a needle in a paper haystack," *Grey v. Hoke*, 933 F.2d 117, 120–121 (2d Cir.1991), and must be couched in constitutional terms or language. *Daye v. Attorney General of State of New York*, 696 F.2d 186, 191 (2d Cir.1982)(en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Under 28 U.S.C. § 2254(a) a writ of habeas corpus is only appropriate "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States;" and under § 2254(b) no

---

**7.** Although Petitioner's conviction occurred well before the passage of the AEDPA (in 1996), because he filed the instant Petition after that date, the standards imposed under the AEDPA apply here. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

habeas review is appropriate unless "it appears that the applicant has exhausted the remedies available in the courts of the State."

**All four of Petitioner's claims may be considered exhausted.**

■ By enclosing the Appellate Division briefs and opinion, along with his letter dated January 2, 1986, Petitioner fairly presented the issues (in the instant writ) to the New York State Court of Appeals. Respondent cites *Thebner v. Miller*, 788 F.Supp. 714 (E.D.N.Y.1992) for the proposition that such a "cursory" request for leave to appeal fails to "fairly present" claims to the Court of Appeals. In his motion for leave to appeal, the petitioner in *Thebner* discussed the factual and legal basis of one claim and wrote: "Numerous other issues are raised in defendant-appellant's brief all of which deserve review by this court." The Court held that "Thebner's inclusion in his application to the Court of Appeals of a single sentence which refers, in a general way, to the various claims raised in his sixty-seven page brief to the Appellate Division, is insufficient to fairly apprise the Court of Appeals of the factual and legal issues in those claims." *Id.* at 717. In the instant case, by contrast, Petitioner referenced all of his claims in his January 2, 1986 letter, however cursory. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991)("the fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned"). *See also Joseph v. McGinnis*, 1999 WL 595645 at *1 (S.D.N.Y.)("In this letter, petitioner's claims were argued strictly under state law, without reference to Federal cases or to the United States Constitution. Nevertheless, because counsel's November 14th letter made reference to arguments contained in Point III of petitioner's Appellate Brief [which referenced the Constitution], it may be said that petitioner incorporated

that section of the brief into his leave to appeal application, including the reference to the Fourteenth Amendment"); *Rivera v. Keane*, 1999 WL 816178 at * 4 (S.D.N.Y. Oct.13, 1999)("the narrow issue here is whether a claim that is explicitly raised in a letter application to the Court of Appeals has been fairly presented to that court where the federal constitutional basis for the claim may be found only in an appellate brief incorporated by reference.... I [Chin, J.] ... hold that Rivera's invocation of the Fourteenth Amendment in his appellate brief sufficiently alerted the Court of Appeals to the federal nature of his missing witness charge claim").

Petitioner also adequately presented his claims to the Court of Appeals as being of "constitutional dimensions" by citing the Constitution in his Appellate Division brief, even though his arguments focus on state law and state cases. *Rudd v. Scully*, 199 F.3d 1323 (2d Cir.1999) (citing *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *Anderson v. Reynolds*, 1992 WL 47979, at *5–6 (S.D.N.Y. March 3, 1992) ("After summarizing the factual basis for his argument, Anderson's brief states that '[t]hese errors deprived appellant of his constitutional right to a fair trial. U.S. Const., Amend., [sic] XIV; § N.Y. Const., Art. I, 6.' Finally, on the last page of his brief, Anderson argues that: 'The jury may have convicted appellant in order to punish him even though not convinced of his guilt on the crime charged. Thus, the admission of the uncharged crime evidence, together with the court's failure to place restrictions on its use, deprived appellant of a fair trial.' Anderson thus clearly referred to the federal constitutional provision that now forms the basis for his habeas petition twice in his Appellate Division brief in the context of his arguments about the alleged defects at trial. Therefore, under the authorities cited above, Anderson exhausted his state court remedies.") (citations omit-

ted).[8]

 Petitioner's third claim (regarding the introduction at trial of evidence of "consciousness of guilt"), although exhausted, is forfeited:[9] Diaz failed to object to the evidence being admitted at trial, or to argue for a jury instruction on consciousness of guilt. Resp. Exh. H at 31 ("As defendant concedes, he never objected at trial to the introduction of evidence that he lied to Detective Fletcher at the time of his arrest or to the prosecutor's summation argument that his false post-arrest statements and his flight demonstrated consciousness of guilt. Defendant also never requested that the court deliver an instruction regarding the limited probative value of consciousness of guilt evidence"). There is, therefore, an "independent and adequate" state procedural ground for dismissing this (third) claim; it is not cognizable on federal habeas review. N.Y.Crim. Proc. Law § 470.05 ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same"); *Garcia v. Lewis*, 188 F.3d 71 (2nd Cir.1999)(courts' conclusion that a drug de-

fendant defaulted his Sixth Amendment claim (that his right to a public trial was violated by the exclusion of his mother's companion from the courtroom during the testimony of an undercover officer) when his attorney failed to raise the issue at trial in accordance with New York's contemporaneous objection rules, N.Y.Crim. Proc. Law § 470.05, was an independent and adequate state ground of decision barring federal habeas review of the claim); *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(a federal court may not consider a federal constitutional claim on habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," because in such cases, "the state judgment rests on independent and adequate state procedural grounds").

 Petitioner's claims were, for the reasons stated, exhausted.[10]

**B. Undue Delay**

 The Court is mindful of the substantial prejudice stemming from the Petitioner's delay in filing the instant Petition. There was a the twelve year gap between the date that the Appellate Division unanimously affirmed Petitioner's conviction in

---

8. Additionally, Diaz's first claim (re: guilt beyond a reasonable doubt) calls "to mind a specific right protected by the Constitution," *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982)(en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984) and, therefore, presented an issue of constitutional magnitude to the Court of Appeals.

9. If a petitioner has no remaining state forum in which to pursue a state remedy because of a procedural bar, his claim may be deemed exhausted yet forfeited. *See Teague v. Lane*, 489 U.S. 288, 297–99, 109 S.Ct. 1060, 103 L.Ed.2d 334(1989); *see also Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991)(a "federal habeas corpus court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred")(quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308(1989)); *Robertson v. Artuz*, 2000 WL 10265 (S.D.N.Y. Jan.4, 2000).

10. A District Court may review and deny a (mixed) petition consisting of both exhausted and unexhausted claims on its merits, notwithstanding a petitioner's failure to exhaust state judicial remedies. *Loving v. O'Keefe*, 960 F.Supp. 46, 49 (S.D.N.Y.1997)("The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" or the "Act"), however, amended 28 U.S.C. § 2254(b) to permit courts to deny applications for a writ of habeas corpus on the merits, notwithstanding a petitioner's failure to exhaust state remedies. Pub.L. No. 104–132, § 104, 110 Stat. 1214, 1218 (1996) (codified at 28 U.S.C. § 2254(b)(2))").

1985 and the date that Diaz filed the instant Petition in 1997.

Rule 9(a) of the Rules Governing Section 2254 Cases ("Rules") in the United States District Courts provide that:

Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

According to the Advisory Committee Notes to Rule 9:

This rule is intended to minimize abuse of the writ of habeas corpus by limiting the right to assert state claims ... Subdivision (a) provides that a petition attacking the judgment of a state court may be dismissed on the grounds of delay if the petitioner knew or should have known of the existence of the grounds he is presently asserting in the petition and the delay has resulted in the state being prejudiced in its ability to respond to the petition. If the delay is more than five years after the judgment of conviction, prejudice is presumed, although this presumption is rebuttable by the petitioner.

In the latest of several requests by Respondent for an extension of time to file its answer, dated January 4, 1999, Respondent wrote:

The reason for the extension request is that we are not in possession of all the state materials necessary to formulate a complete answer. The petition relates to a case that was tried seventeen years ago. Upon receipt of the petition from the Court, a request was made to this Office's Closed Cases Unit to locate the trial file, the trial transcript and the appeals file relating to petitioner's state prosecution.

As I informed the court in my previous extension request, due to the length of time since petitioner's conviction, we have had trouble locating many of those documents. The microfiche containing the state appellate briefs was missing, thus requiring us to obtain the briefs from other sources. We have just recently received those briefs. Additionally, we have not yet located a copy of the trial transcript, and have again requested that a search be conducted. Thus, I do not yet have all of the documents necessary to adequately respond to the petition.

Notably, the state direct appeal ended almost thirteen years ago. Petitioner's conviction was unanimously affirmed by the Appellate Division of the Supreme Court of New York on December 15, 1985 and leave to appeal to the New York Court of Appeals was denied on February 12, 1986. Thus, petitioner has delayed seeking any federal relief for over twelve years. To that extent, his petition does not raise claims that he has been vigorously and continually urging (emphasis added). In fact, Respondent was (apparently) never able to locate a copy of the entire trial transcript, the absence of which is prejudicial to Respondent's ability to respond to claims that are fact intensive. The difficulty of adjudicating the claims raised here—including the assertion that there was insufficient evidence of guilt—without a trial transcript, is self-evident. Petitioner's undue delay in presenting this case provides grounds to dismiss. *See* 28 U.S.C. § 2254(e)(1); *see also Benn v. Stinson,* 917 F.Supp. 202, 208 n. 6 (S.D.N.Y.1995)(while petitioner's undue delay "does not bar his habeas petition, 'delays and failure to raise issues can be taken into account by a court ruling on a motion for collateral relief.' ")(quoting *Pacelli v. United States,* 588 F.2d 360, 365 (2d Cir.1978)).

However, even if Petitioner's claims were timely, they should be dismissed on the merits.

## C. Merits of Petitioner's Claims

Habeas relief may not be granted unless the court finds that the claim:

> (1) resulted in a decision that was contrary to, or involved, an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court preceding.

28 U.S.C. § 2254(d). A Federal District Court will grant habeas relief only "if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." *Drinkard v. Johnson*, 97 F.3d 751, 768–69 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315, *rev'd on other grounds, Lindh v. Murphy*, 521 U.S. 320, 325, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). *See generally Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### 1. *Guilt Beyond a Reasonable Doubt*

A petitioner basing a challenge upon the sufficiency of the evidence underlying his conviction "bears a very heavy burden." *United States v. Rivalta*, 892 F.2d 223, 227 (2d Cir.1989). A conviction will only be overturned for lack of sufficient evidence if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could find the elements of the crime to exist. *United States v. Montour*, 944 F.2d 1019, 1024 (2d Cir. 1991).

█ Applying this standard, the Court concludes that the evidence of Petitioner's guilt was strong and certainly sufficient. The prosecution introduced evidence at trial, **including an eyewitness identification of the Petitioner as the murderer,** which established that Petitioner was at the scene of the crime, that he engaged in a fight with Luciano, and that in that fight he drew a gun and shot Luciano in the back, causing Luciano's death. The People also introduced evidence, among other things, that Diaz fled from New York after the killing, and that, when finally questioned by the police, he denied being at the scene of the crime. Eyewitness testimony was also corroborated by a number of other prosecution witnesses:

> First, several witnesses recalled that [Petitioner] was in the Tres Copas on the night of the crime. Hugo Roman, the owner of the Tres Copas bar [located next door to the Viente de Mayo restaurant], knew [Petitioner] and recalled him leaving the bar shortly before the shooting occurred. Raphael Negron, who was across the street from the scene of the shooting, heard the shot and saw two men fitting the general description of [Petitioner] and Milton Ramos flee the scene. Finally, the medical examiner testified that Luciano was killed by a bullet which entered his body in the lower back, exactly as Cabreja had recalled, and that Luciano had a fresh cut over his right eye, also consistent with Cabreja's recollection that Luciano had been punched in the face during the fight which preceded the shooting.

Resp. Exh. H, pp. 14–15.

Petitioner's principle defense was (and is) that a "look-alike," Miguel Esteves, was the real killer. However, Esteves was "introduced" to the jury, which was not persuaded.[11] Viewing the evidence in the light most favorable to the prosecution, the People were able to make out the elements of murder in the second degree.[12] *United States v. Montour*, 944 F.2d 1019, 1024 (2d

---

11. *See* description of Esteves' role at trial at page 4, supra.

12. The elements of murder in the second degree are: (i) in circumstances evincing a depraved indifference to human life, (ii) Petitioner recklessly engages in conduct, which (iii) creates a grave risk of death to another person, and (iv) thereby causes the death of another person. N.Y. Penal Law § 125.25.

Cir.1991)(only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could find the elements of the crime to exist, will the conviction be overturned); *Mallette v. Scully*, 752 F.2d 26, 31 (2d Cir.1984)(the issue in a claim of insufficient evidence is whether the jury acted rationally in finding the defendant guilty).

### 2. *"Bolstering"*

■ Under New York law, bolstering is "derived from *People v. Trowbridge*, 305 N.Y. 471, 113 N.E.2d 841 (1953), that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification occurred." *Styles v. Van Zandt*, 1995 WL 326445 at *5 (S.D.N.Y.1995), *aff'd mem.*, 101 F.3d 684 (2d Cir.1996), *cert. denied*, 519 U.S. 936, 117 S.Ct. 313, 136 L.Ed.2d 229 (1996). Petitioner alleges that "because this case hinged on the sole, and repeatedly contradicted, testimony of one purported eye witness [sic], the prosecutor obviously deemed it necessary to have various police officers bolster this solitary testimony. This gave the otherwise weak testimony an undeserved aura of soundness." Petition at 5.

Any bolstering that may have occurred (including testimony that Detective Fletcher began to look for Petitioner after speaking to Cabreja) seems appropriate in this case because Petitioner appears to have argued at trial (e.g., in his cross-examination of Cabreja) that Cabreja had changed his testimony. Aff. in Opp. ¶ 46. Fletcher's testimony may have been admissible to show that a prior statement of Cabreja's was consistent with his trial testimony, thereby rebutting the defense's accusation of Cabreja's recent fabrication. *U.S. v. Forrester*, 60 F.3d 52 (2d Cir.1995); *Tai v. Artuz.*, 1999 WL 182590, 1998 U.S. Dist. LEXIS 13730 (S.D.N.Y. Aug. 31, 1998)(on habeas review, the admission of prior consistent statement during state trial was correct where defense attorney's cross-examination of witness manifested a strategy that suggested recent fabrication); Fed. R.Evid. 801(d)(1)(B).

■ Even assuming, arguendo, that the State court erred in admitting the alleged "bolstering" testimony of Detective Fletcher, such an erroneous evidentiary ruling does not automatically pose a Federal constitutional issue. *Gilmore v. Curry*, 523 F.Supp. 1205, 1208 (S.D.N.Y.1981)("erroneous evidentiary rulings do not automatically rise to the level of constitutional error"); *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983)(in general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue). In fact, the introduction of improper evidence does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violated fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.), *cert. denied*, 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). Petitioner's claim does not rise to that level.

■ Bolstering claims have been (expressly) held not to be cognizable on federal habeas review. *Styles*, 1995 WL 326445 at *5 ("a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief"); *Vega v. Berry*, 1991 WL 73847 (S.D.N.Y. April 29, 1991)("although bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial"); *Orr v. Schaeffer*, 460 F.Supp. 964, 967 (S.D.N.Y.1978)("this Circuit has never regarded the practice [of bolstering] as inimical to trial fairness"); *Malik v. Khoenan*, 1996 WL 137478 (S.D.N.Y. March 26, 1996)("a claim of bolstering is not a federal constitutional claim cognizable on habeas review").[13]

---

**13.** Admission of bolstering testimony amounts to harmless error (if, indeed, there was any

### 3. Consciousness of Guilt

Petitioner contends that improper evidence of consciousness of guilt was allowed at his trial:

> Several weeks after the shooting, petitioner made a trip to Florida to renew his drivers license. He then returned to New York having accomplished that renewal. There was no evidence whatsoever that petitioner had any idea that he was a suspect in the shooting. However, the prosecutor was allowed to bolster his incredibility [sic] weak case by alleging that this trip to Florida somehow indicated consciousness of guilt on petitioner's part and was falsely denominated "flight". [sic] Further, a post-arrest statement by petitioner that he had not been in the area the night of the shooting was used by the prosecutor as additional consciousness of guilt. **By the introduction of the "red herring" of flight as consciousness of guilt the prosecutor deprived petitioner of his constitutional right to due process and a fair trial.**

Petition at 6 (emphasis added).

■ Under New York Law, the assertion of false explanations or alibis, flight, or the destruction or concealment of evidence comes within the broad category of conduct evidencing a "consciousness of guilt" and, therefore, is admissible and relevant. *See, e.g.,* 2 J. Wigmore, Evidence § 276, at 111 (3d ed. 1940) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself"); 1 Wharton's Criminal Evidence (12th ed., 1955), §§ 207, 209, at 427–431; 3 Warren on Homicide, § 275, at 263.

■ Assuming, arguendo, that the state court erred in admitting evidence (of Diaz's flight and subsequent false exculpatory statements) as consciousness of guilt, such an erroneous evidentiary ruling does not rise to constitutional dimensions. *Gilmore*, 523 F.Supp. at 1208; *Taylor*, 708 F.2d at 891. Admission of evidence showing consciousness of guilt is not "so extremely unfair that its admission violated fundamental conceptions of justice." *Dunnigan*, 137 F.3d at 125. Second Circuit courts have routinely allowed admission of evidence of flight, *U.S. v. Harley*, 682 F.2d 398 (2d Cir.1982)("from the very infancy of criminal litigation, juries have been permitted to consider flight as 'evidence of consciousness of guilt and thus of guilt itself' "), and false exculpatory statements, *U.S. v. Rubin*, 37 F.3d 49 (2d Cir.1994)(in light of defendant's denial of writing certain checks, their introduction was "relevant as tending to establish that Rubin knowingly executed a scheme to defraud the bank. In conjunction with other evidence presented by the government, this evidence tends to prove that Rubin must have known that the checks that he deposited were stolen and fraudulently endorsed and that in cashing them he would defraud the bank").[14]

### 4. Denial of CPL § 440.10 Motion Without a Hearing

■ "[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir.1998), *cert. denied*, 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806(1999); *Nichols*

---

error) because it did not have "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), in light of the substantial (other) evidence against Petitioner. There was substantial evidence, even excluding the alleged "bolstering" testimony, to allow a rational trier of fact to convict.

**14.** The error (if any) was harmless in light of the substantial evidence of guilt under the *Brecht* standard, including, among other things, the eyewitness identification and other corroborating evidence.

*v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995)(an attack on a CPL § 440.10 motion "does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself"); *Turner v. Sullivan,* 661 F.Supp. 535, 540–41 (E.D.N.Y.1987), *aff'd,* 842 F.2d 1288 (2d Cir.), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988)(claim that trial court violated due process by denying CPL § 440.10 motion without setting out findings, conclusions and its reasoning not cognizable on federal habeas review; "Petitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be issued on the basis of a perceived error of state law").

 In the instant case, Petitioner's unsupported assertion that the trial court denied his (third) CPL § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review. *Nichols,* 69 F.3d at 1275.[15]

## IV. Order

For the reasons stated above, the Petition [1–1] is denied. The Court further finds that a Certificate of Appealability is not warranted as Petitioner has not made a substantial showing of denial of his constitutional rights, 28 U.S.C. § 2253(c), and any appeal from this order would not be taken in good faith for purposes of 28 U.S.C. § 1915.

---

**15.** The trial court was not required to conduct an evidentiary hearing. *See* CPL § 440.30. The trial court noted that "If I think there's merit I will grant the hearing as indeed I did grant a hearing in the case where I though there was merit on the basis of Mr. Gomez's affidavit," Aff. in Opp., Exh. C at 25, and, "I don't see how there is any basis of the information that's been submitted here since at most what we have is gross speculation and I don't see on what theory a jury's verdict would have to be disturbed based on such speculation,"*Id.* at 11. The court also noted that "everything you've said is speculative and conjectural and there's no hard evidence one way or the other. You're hoping if maybe we have a hearing maybe something will fall into place." *Id.* at 32. The trial court also noted that two assistant district attorneys had signed sworn affidavits rebutting Petitioner's accusations (that there had been a conspiracy in the DA's office that precluded the Petitioner from cross-examining Esteves). *Id.* at 11–12.

This Court agrees with the trial court's determination that "the defense has not met its burden of being able to show or persuade this Court that there is a basis even for a hearing to set aside a judgment of the jury which under the best circumstances should not be upset unless there are compelling reasons to do so ...." *Id.* at 40.